IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1888.

### WILLIAM CHISM v. CHARLES SCHIPPER.

1. When a building contract provided that the decision of the architect should be conclusive on the question whether work done in the course of the erection of the building was within the specifications or not— *Held*, that it was an implication indispensable to the effectuation of the purpose of the parties, that such decision should be an honest one.
2. Fraud in the decision of the arbiter may be set up in a suit on the contract in avoidance of his decision, even though it does not appear that the party who would benefit by it has colluded.

On demurrer to declaration. On case certified from the Essex Circuit Court.

The declaration was founded on a building contract, under seal, whereby it was alleged the plaintiff agreed to "erect and finish" a certain dwelling-house "agreeably to the drawings and specifications by Oscar S. T., architect, within the time aforesaid, in a good, workmanlike and substantial manner, to the satisfaction and under the direction of said architect, to be testified by a writing or certificate, under the hand of said

architect;" that the plaintiff was to furnish all materials, &c., and that for his work and materials he was to be paid the sum of $6,050; that if the defendant requested alterations, additions or omissions, which, at a reasonable valuation, were to be deducted from or added to the contract price; that the defendant did request certain alterations (which were specified), which were made, to the value of $600; that it was further provided that in case of a dispute arising as to the true construction or meaning of the drawings or specifications, the said architect was "to decide the same, and whose decision should be final and conclusive." Full performance on the part of the plaintiff is alleged.

The breach is that the said architect " willfully and fraudulently decides that the aforesaid alterations, deviations and additions are within the true construction of said drawings and specifications referred to in the said contract, and that the plaintiff is not entitled to be paid the fair and reasonable value thereof, and willfully and fraudulently withholds from the plaintiff, and refuses to sign the certificate, required by said contract, for the fifth and last payment called for thereby; which fraudulent and willful decision of the architect, and fraudulent and willful withholding of the said certificate have been brought to the knowledge of the said defendant by the said plaintiff; but the said defendant, though often," &c., " hath not paid the said sum of $600," &c.

This count was demurred to, and the issue thus raised was certified for the opinion of the Supreme Court.

Argued at June Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP, MAGIE and GARRISON.

For the demurrant, *Craig A. Marsh.*

Plaintiff sues upon a special building contract under seal, a copy of which is annexed to and made part of the declaration. Defendant demurred. Plaintiff joined in demurrer, and demanded specifications. Defendant specified ten causes (copy of which specification is contained in the case certified),

nine of which are presented for the advisory opinion of this ·court.

In the following points, the questions raised are grouped as indicated :

I. The production of the certificate of the architect is made a condition precedent by the contract sued on.

The certificate is equally required whether for work detailed in the specifications or for extra work, alterations, &c. *Barton* v. *Hermann*, 11 *Abb. Pr.* 379 ; *Morgan* v. *Birnie*, 9 *Bing.* 672 ; *Westwood* v. *Secretary of State for India*, 11 *W. R.* 261, ·cited in 9 *Jac. Fisher's Dig.* 14289. The same form of contract was construed in *Barton* v. *Hermann, supra,* and the court held " the contract accordingly involved the original as well as all extra work."

The declaration itself alleges the non-production of the certificate of the architect.

The condition precedent being thus shown by plaintiff's ·own pleading not to have been performed, action cannot be maintained. *Morgan* v. *Birnie, supra ; Byrne* v. *Sisters of St. Elizabeth*, 16 *Vroom* 213 ; *Westwood* v. *Secretary of State for India, supra.*

The allegation of fraud on the part of the architect does not dispense with the necessity of performance of the condition precedent. The builder may compel the architect to deliver the certificate by bill in equity, or he may sue him for the fraud.

Even if the defendant were a party to the alleged fraud, it would be more logical to sue the guilty parties for the tort, or to proceed in equity to compel the production of the certificate, and in the absence of any direct precedent on the point in this state, that rule should be adopted in preference to the illogical rule obtaining in some states where courts of equity and of law are combined, and the code system of pleading prevails. *Kimberly* v. *Dick, L. R.,* 13 *Eq.* 1 ; *Pawley* v. *Turnbull*, 3 *Giff.* 70 ; *Owens* v. *Beadel*, 2 *Id.* 166 ; *Milner* v. *Field*, 5 *Exch.* 829.

In the case last cited, the court, after consultation, distinctly held : "Where, by the contract itself, the certificate of a surveyor is made a condition precedent to the right to payment, even if it be withheld by fraud, that is only the subject of a cross-action. The non-suit, therefore, was right."

But the rule need not be held to be so broad to sustain the demurrer in this case, since the fraud alleged is charged not against the defendant, but against the architect, who is not a party to the action.

II. Under the rule most favorable to the plaintiff which this court will consider at all, the plaintiff must show one of two things :

1. Performance of the condition precedent ; or

2. That the defendant wrongfully prevented such performance of the condition precedent by his willful or fraudulent act. *Bishop on Contracts*, §§ 586, 1422 ; *Hinds* v. *Henry*, 7 *Vroom* 328.

Respecting building contracts, Addison clearly recognizes the principle contended for, that where the certificate is withheld, there must needs be shown the collusion of the employer to entitle the builder to recover on the contract.

See, also, *McAndrews* v. *Tippett*, 10 *Vroom* 109. There the question was concerning delay which prevented performance. The Court of Errors unanimously sustained the court below in charging the jury that there were two questions : "1. Was there unreasonable delay ? 2. Did the defendant cause the delay ? "

In the leading case in this state on building contracts like the present (*Byrne* v. *Sisters of St. Elizabeth, supra*), the principle insisted upon is clearly recognized. Thus the court say : "Where the contract has been performed and the builder has, by fulfilling his contract obligation, become entitled to such certificate, it is a fraud upon him to withhold or refuse it, for which the architect is liable if such refusal be with knowledge that the builder has fully performed his work. And an employer who acts in collusion with such architect, in withholding it, is subject to a like liability."

In the case at bar, the declaration fails to allege any collusion by the defendant with the architect. It alleges no fraud on the part of the defendant.

The opinion of Judge Nixon, in the United States Circuit Court, in *Batchelor* v. *Kirkbride*, reported in 9 *N. J. L. Jour.* 199, while it discusses the question, does not seem to be precisely in point, because, as stated in the opinion, on page 200, the defendant wrongfully took the building out of the contractor's hands, thereby abrogating the contract, and the action was not brought upon the contract, but upon the *quantum meruit*, on the allegation and assumption that the owner had unlawfully terminated the contract. This serves to clearly distinguish the case from the one at bar.

If defendant is required to prove facts and circumstances showing that the architect rightfully withheld the certificate, the clause in question of the contract is anulled, since the defence suggested would be practically non-performance of the main contract, which needs no special clause to support it.

As Lord Chancellor Chelmsford remarked, in Scott *v.* Corporation of Liverpool: "Arguments drawn from the hard terms of an agreement by which the parties had deliberately consented to be bound, were not admissible."

Pleading fraud of A as the ground of action against B, without alleging B's participation in the fraud, is preposterous, yet that is the position which plaintiff is called upon to advocate in the case at bar.

In *Bowery National Bank* v. *Mayor*, 63 *N. Y.* 336, it was admitted that the contract had been fully performed according to its very letter, and that the only reason the certificate was not given was that the water purveyor was enjoined from giving actual certificate by reason of another suit. The court cites no authorities. The court had equity powers.

In *Thomas* v. *Fleury*, 26 *N. Y.* 26, the court cites no authorities, and gives the following reason for the opinion reached : " The certificate is mere evidence of the substantial fact of performance ; and if the kind of evidence of the fact stipulated for is obstinately and unreasonably withheld, a for-

feiture of $2,700 is not to be exacted for that reason from the plaintiff."

This reasoning can have no force in New Jersey. No for-feiture need be feared. *Ubi jus ibi remedium* is not infracted. At least two plain remedies are open. The architect may be forced to give the certificate, or he, or the owner, or both, may be sued in tort for the fraud.

Plaintiff urged below that this action was maintainable be-cause defendant had accepted the building. The declaration does not allege acceptance of the building by the defendant. It merely alleges that he has moved in. This was held in the well-considered case of *Bozarth* v. *Dudley*, 15 *Vroom* 304 (see page 312), to be not even presumptive evidence of acceptance.

On the facts stated in the declaration, the fraudulent archi-tect can be compelled to deliver the certificate, or to pay damages, as plaintiff may elect. The rule contended for by defendant completely protects the contract rights of all parties. Any other rule would impair the obligation of the contract.

The demurrer on the points above discussed, it is submitted, should be sustained, both on principle and authority.

III. Plaintiff has sued the wrong man. The count de-murred to shows a good cause of action against the architect, Oscar Teal, in this court, for fraud, or, in a court of equity, for relief. It shows no legal cause of action against this defend-ant.

If plaintiff has any cause of action, it is in tort for the fraud.

For the plaintiff, *Edward M. Colie.*

The demurrant insists that the willful and fraudulent with-holding of the certificate and willful and fraudulent decision by the architect are not sufficient to fix the liability of the owner, unless such conduct is by collusion with him. Such collusion is not necessary. The fraudulent and willful with-drawing of the certificate by the architect is sufficient to charge the defendant.

The case of *Byrne* v. *Sisters of St. Elizabeth*, 16 *Vroom* 214, does not decide the question. In that case there was no

charge of willful and fraudulent conduct on the part of the architect. And if there is any real conflict as to the law elsewhere, the courts of this state are free to adopt the rule most consonant with justice. In that case, however, it is said: "An employer may demand of his architect faithful performance of the duty assumed by him, * * * and for a false certificate, under which he is made to pay unearned money, may recover his damages from the person so unfaithful to his trust." This statement would seem to involve the doctrine that where an architect acts fraudulently, either in giving or withholding a certificate, the employer is bound by his acts, and must look to him as to an unfaithful servant. Referring to this case, the Vice-Chancellor, in *Kirtland* v. *Moore*, 13 *Stew. Eq.* 106, at page 111, says: "No right to the money earned under the contract accrues, and no action can be maintained to recover it, until the certificate has been procured or the contractor is entitled to it."

Any confusion that exists as to the law results from statements of text-writers—notably, 2 *Addison on Contracts* (3d *Am. ed.*), § 861, where the law is stated to be: "But the employer is not responsible for any misconduct of the architect or surveyor in refusing to certify not brought about or by his instrumentality or interference," citing *Clarke* v. *Watson*, 18 *C. B., N. S.*, 278. This statement is not supported by the citation, as will be hereafter shown.

The doctrine established by the cases, on the contrary, is that fraud in the decision of the architect or superintendent will excuse the failure to obtain his decision where it is a condition precedent; this, too, without regard to whether the architect or superintendent is the agent of the defendant or not. The cases do not rest on any such distinction, but rather that the parties contract to be bound by the honest and not the fraudulent decision of the arbiter, and his fraud relieves from the performance of a condition precedent requiring his decision or certificate.

The doctrine that fraud on the part of an engineer who was to certify as to the performance of a contract, as a condi-

tion precedent to a recovery, will allow the plaintiff to recover, upon proof of the quantity and value of the work done, is laid down by the following cases: *Lynn* v. *Baltimore and Ohio R. R. Co.*, 60 *Md.* 404, 45 *Am. Rep.* 741; *Baltimore and Ohio R. R. Co.* v. *Polly*, 14 *Gratt.* 447; *Wilson* v. *York, &c., R. R. Co.*, 11 *G. & J.* 58; *Baltimore and Ohio R. R. Co.* v. *Resley*, 7 *Md.* 297; *Hudson* v. *McCartney*, 33 *Wis.* 331.

The same doctrine is recognized in *Fetz* v. *Butterfield*, 54 *Wis.* 242; *Snell* v. *Brown*, 71 *Ill.* 133; *Schenke* v. *Rowell*, 7 *Daly* (*N. Y. C. P.*) 286.

In *Thomas* v. *Fleury*, 26 *N. Y.* 26, where the contract was practically the same as in this case, and made an architect's certificate a condition precedent to payment, it was held, "that when the architect, unreasonably and in bad faith, refused the certificate, the builder might recover, upon giving other proof of performance," as well where the action is upon the contract as where it is upon a *quantum meruit.*

In *Bowery Nat. Bank* v. *Mayor*, 63 *N. Y.* 336, where a certificate was a condition precedent, Folger, J., at page 339 of report, says: "It was necessary for them either to prove upon the trial the making of the certificate, * * * or to show it was refused unreasonably or in bad faith. In *Martin* v. *Leggett*, 4 *E. D. Smith* 255, under a like provision, Woodruff, J., says: "Had he (plaintiff) shown that the certificate was fraudulently withheld or refused by the architect through collusion with the defendant, he might be entitled to receive on showing, *prima facie*, that the agreement was in other respects performed."

*Batchelor* v. *Kirkbride*, 27 *Fed. Rep.* 899, 9 *N. J. L. Jour.* 199 (at which last citation see statement of law by Justice Bradley), is directly in point. The controversy there depended upon the non-production of the certificate, and it is held (*Fed. Rep.* 901, and 9 *N. J. L. Jour.* 201), "that fraud by the arbiters, although not in collusion with the defendant, entitles the plaintiff to recover."

See there the criticism of *Clarke* v. *Watson, supra*, and citation from Willes, J., showing the true ground of that decision.

On reference to Clarke *v.* Watson it will be seen that the certificate required was that of the agent (surveyor) of the defendant, and that the doctrine of agency is not considered as entering into the question. The English cases do not conflict with this doctrine, except so far as they hold that where a certificate is a condition precedent, recovery cannot be had even by showing collusion between arbiter and defendant, but that resort must be had to a cross-action.

In the case of a condition precedent there must be a compliance therewith, or an excuse for non-compliance, shown as well in equity as at law. *Barney* v. *Giles* (Ill.), 2 *N. E. Rep.* 206.

In *Ormes* v. *Beadel,* 2 *Giff.* 166, it was held "where, by the contract, the award of the architect is final, and is fairly and impartially made, this court will not relieve against it, however severe may be its effects, but where the arbitrator is found guilty of unfairness or partiality, this court will relieve against his award." See, in this case also, remarks upon *Scott* v. *Corporation of London,* 1 *Giff.* 206, showing its limitations, and see Scott *v.* Corporation, &c., where it appears that "no case of fraud, misconduct, incapacity or refusal to act" was established against the engineer. See, also, *Pawley* v. *Turnbull,* 3 *Giff.* 70.

*Batterbury* v. *Vyse,* 2 *Hurlst. & C.* 42, is, in fact, a decision in support of the plaintiff in this case. The note of point of argument in that case on the part of the plaintiff (page 46 of report), is "that the defendant, who employs the architect, does contract with the plaintiff that he will do his duty and act fairly." The declaration was sustained; it contained a charge of collusion, but the note of argument indicates that collusion was not the basis of the decision but the fraud of architect.

The case of *Milne* v. *Field,* 5 *Exch.* 829, is of consequence, because it holds that where a certificate is a condition precedent an action cannot be maintained, even where it is fraudulently withheld by collusion with the defendant, and that a cross-action must be brought.

The case is in direct conflict with *Clarke* v. *Watson, supra,* and opposed by the other citations, *supra,* and rests upon the most stringent view of a condition precedent. It is, however, the logical doctrine, if fraud on the part of the arbiter is not sufficient excuse for non-performance of a condition precedent dependent upon him. It is the policy of the jurisprudence of our state to prevent multiplicity of actions, and not compel resort to cross-actions, and this consideration will lead to the adoption of the rule laid down in American cases, holding that fraud on the part of the arbiter will excuse the production of his certificate. This rule accomplishes complete justice.

A general allegation of performance is all that is required in the declaration. *Rev. Prac.,* § 126 ; *Vreeland* v. *Beekman,* 7. *Vroom* 13.

The contract does not require arbitration except in case of dispute as to the value of the extra work. No such dispute appears by the count to exist. By section 3 of contract the builder is *prima facie* entitled to the fair and reasonable value of the work ; further, if arbitration was necessary, the fraudulent decision of the architect that there is no extra work prevents any submission as to the amount, and is a sufficient excuse if the same is required, under the above authorities.

The action is "upon contract," and it is submitted should be such, and not "upon tort."

A notice was given to strike it out, and argued at the Circuit and decision held. The authority under which the notice was given is *Bradley* v. *Johnson,* 17 *Vroom* 273, where it is expressly decided that such a specification is bad, and will be stricken out on motion.

It is submitted that under the statute abolishing special demurrer, and the consideration of matters of form on demurrer, and "judgment according as the very right of the cause and matter in law should appear," the count demurred to is good.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.  A comprehension of the facts stated in the summary of the declaration prefixed to this opinion will make it manifest that the question to be decided is, Can the defendant cheat the plaintiff by due course of law?

The case, in brief, is this: The plaintiff has done work for the defendant to the value of $600, which work was additional to that specified in the written contract; the money was payable on the certificate of the architect, whose decision was to be final; such architect fraudulently decided that the work in question was not additional, but was embraced in the contract, and the defendant, being notified of the facts, refused to pay the demand.  As the demurrer confesses the truth of this statement, it will be observed that the defendant stands now before the court saying: I admit that this money is due for additional work; I admit that the architect fraudulently certifies to the contrary; and I claim, that by a correct application of legal principles, I have the right to take advantage of this fraud, and to appropriate to myself the moneys that are its fruits.  The inquiry is, Does the law, in reality, justify this immoral attitude?

It should be premised to the inquiry, that if this action will not lie, neither will any action lie against the defendant, founded on the facts stated, either at law or in equity.  As such a result would be one much to be deprecated, and would stand as a blot on the jurisprudence of the state, it would seem that the most cogent reasons should be forthcoming to afford a satisfactory answer to the interrogatory: Why should a man be permitted to take advantage of the fraud of another?  The only known reply is, that the plaintiff has covenanted to that effect; that he has agreed that the action of the architect, whether honest or dishonest, shall be conclusive.

It is proper to say, *in limine*, that it is not by any means deemed certain that this contract, if to be read in the sense just specified, is sustainable in law.  It is assumed that a man cannot contract that he himself may commit a fraud; for example: this defendant could not have agreed that this money

should not be payable except on his own written certificate, and that he might fraudulently withhold such certificate. If such a stipulation would, as it is thought, be expurged from the instrument on grounds of public policy, how can the party legally stipulate that another may commit this same crime for him? The capacity of parties to a contract to provide that one or the other, as the case turns out, may be cheated, does not appear to be a faculty requisite in the transaction of any legitimate business; while, at the same time, its existence is palpably offensive to good morals, and, consequently, may well be said to be adverse to the public welfare. The consequence is that it is, in my opinion, doubtful whether such an agreement can be legally made; but it is not deemed necessary to pursue the inquiry, inasmuch as, by proper rules of construction, applied to the facts set forth in this record, the proper conclusion is, that the contract existing between these parties does not contain this stipulation, so highly questionable.

The inquiry is: What did these parties mean? Did they intend, or by reason of the language employed must it be concluded *de jure*, that they intended, to be bound by the award of the architect, even though such award was the creature of fraud?

The clause thus referred to is in the common form, that has long been in frequent use; and yet, it may be safely said, that it is most improbable that it would have been adopted in a single instance if it had expressed in plain terms the meaning that it is now contended lies latent in its expressions. It is hard to believe that any self-respecting man would put his name to an agreement that a third party might do in his favor a fraudulent act. Nor does it seem probable that to the ordinary mind any suggestion of so extraordinary a purpose would be made by the generality of the expressions of this clause of the contract under criticism. And this last is an important consideration, for it is truly remarked by Chief Justice Gibson, in *Schuylkill Nav. Co.* v. *Moore*, 2 *Whart.* 477, 491, that in the interpretation of contracts " the best construction is that which is made by viewing the subject of the contract, as the mass of

mankind would view it, for it may be safely assumed that such was the aspect in which the parties themselves viewed it." Tested by this standard, it would seem to be certain that the construction of this term of the contract insisted on by the defence in this case cannot prevail.

But the adverse argument is, that the agreement of the parties is to be ascertained from the plain language used by them, and such agreement is to be enforced, no matter what the intention may have been.

This is the general rule, beyond a doubt, but such required literalism is not to be pushed to the preposterous length of requiring, that by its operation the general intention of the parties, as evidenced by their contract itself, shall be frustrated or perverted, either in whole or in part. The terms employed are servants and not masters of a perspicuous intent; they are to be interpreted so as to subserve and not to subvert such intent. As an illustration : it plainly appears on the face of this instrument that it was the evident and sole purpose of the provision in question to provide for the fair and definite decision of certain matters ; and it is now said that by force of the terms used, the decider is empowered to cheat either party at will ; and yet it is obvious that the existence of such a power in the agent has no tendency to effectuate the object in view, but so far as it can operate, is destructive of it. The stipulation giving the quality of finality to the action of their agent, is part of a contrivance of these parties to enforce fair dealing between them in certain particulars; there seems to be no reason why they should impart to such a contrivance a fraudulent potency. It was quite reasonable for these parties to say to their agent, decide honestly between us and your decision shall be final; but it was utterly unreasonable for them to agree to abide by such award if it were fraudulent. For my own part, I do not believe that in the history of the human race, the transaction has occurred in which a man has consciously agreed that another should be clothed with the power to cheat him, and that the decision of the fraudoer should be conclusive on the subject. And in the present instance such a stipulation

càn be constructed only by an abstract interpretation of the conventional terms; for, if such language be construed as a part of an integer, and in the view of purpose in hand, it can be made to produce no such result. There is no more important rule of construction than that which requires that words shall be interpreted in the reflected light of the context in which they are found. And applying this rule to the case in hand it is not perceived how it can be reasonably said that these parties have given to the provision in question that noxious efficacy that is sought to be imparted to it.

That the clause under discussion cannot be, out and out, construed literally, appears to be undeniable. This and similar engagements are never so read. Undoubtedly, if we construe these terms with entire literalness, the builder is required to produce, before he can claim the money due him, the certificate of the architect. There are no exceptions provided for nor indicated if the language is thus alone regarded. But suppose the money be earned, and the architect die before the signing of the certificate, is the claim lost or forfeited? Such a result, it is presumed, would not be claimed; and yet it is avoidable only in one way, and that is, to construe the terms of the contract reasonably as applied to their subject, and not literally. The exception can stand on no other ground than this, for the maxim, " *actus dei nemini facit injuriam,*" is never applied in violation of a contract. Looking to the letter alone, these parties have said that under all possible circumstances the certificate shall be a condition precedent to the right to payment. Admitting this as the true construction, the impossibility of the performance of such condition would not avoid it; and that such an effect has never been judicially given to such provisions, shows conclusively that they have been interpreted according to their spirit and not in subservience to their very letter.

And, indeed, in my view, the entire legal course that has been pursued in the construction of submissions to arbitration, in the common-law form, can be explained only on the ground that they have been construed liberally and not with literal

narrowness. In all these submissions the stipulation is in the most unqualified form, that the award shall be final and conclusive; but if such award be tainted with fraud, it is set aside on the application of the party. And yet, it is plain that such party could not be permitted to make such application if his submission is to be read by its letter, and thus made to mean an engagement on his part to abide by the award, whether honest or dishonest. In such cases it has never been pretended that the parties by the terms of their submission, reasonably understood, meant anything of the kind. The grounds of decision in that entire class of cases would seem to be precisely applicable to the present case.

As another illustration of the principle that a literal interpretation is out of place when its adoption will run counter to the expressed general object of the contract, reference may be made to the familiar case of clauses so frequent in leases, that if the rent is in arrear for a certain time the instrument shall become void. In all these instances the courts have declared, notwithstanding the literal meaning of the terms, that the lease, on the happening of the event, is not absolutely vacated, but only becomes voidable at the option of the lessor.

In looking to the authorities, I do not find that the point now in question has ever been put under the consideration of any of the courts of this state. The subject was not discussed or considered in any of the three cases cited in the brief of the counsel of the defendant, in the decision of which I participated.

With respect to the English law touching this topic, I am inclined to think that it is still in a fluent condition, and that the last word, in reference to it, has not yet been spoken. In *Clarke* v. *Watson*, 18 *C. B.*, *N. S.*, 278, the allegation was that the arbiter had "wrongfully and improperly" neglected and refused to make his certificate—a form of allegation that manifestly did not involve the question of fraud on his part; so that this decision has no place in the present inquiry. *Milner* v. *Field*, 5 *Exch.* 829, goes beyond the requirements of the present case, for it maintains that even the collusion of

the party in the fraud of the arbiter will not dispense with the production of the latter's certificate. The decision of the court is contained in four lines, and has no reference to either legal principles or authority; and in Clarke *v.* Watson, just referred to, which was decided ten years subsequently, in the opinions expressed, a different doctrine is stated; and in *Batterbury* v. *Vyse,* 2 *Hurlst. & C.* 41, this latter view appears to be the one sanctioned. Even the gross misconduct of the arbiter, without the imputation of fraud, in the case of *Pawley* v. *Turnbull,* 7 *Jur., N. S.,* 792, was declared by Vice-Chancellor Stuart to dispense with the production of the certificates, and the payment of the money due was decreed notwithstanding their absence.

This attitude of the authorities it is deemed fully justifies the remark already made, that the principal question has not been definitively settled by the courts at Westminster.

The matter has been more definitely treated by the American tribunals, and the results reached seem to be very generally in accord with the views propounded in this opinion. Of this line of cases the following are leading illustrations: The *Baltimore and Ohio R. R. Co.* v. *Polly, Woods & Co.,* 14 *Gratt.* 447; *Lynn* v. *Baltimore and Ohio R. R. Co.,* 60 *Md.* 404; *Herrick* v. *Belknap,* 27 *Vt.* 673; *Snell et al.* v. *Brown et al.,* 71 *Ill.* 133; *Wyckoff* v. *Meyers,* 44 *N. Y.* 143; *Thomas* v. *Fleury,* 26 *Id.* 26; *Bowery Nat. Bank* v. *Mayor,* 63 *Id.* 336; *Martin* v. *Leggett,* 4 *E. D. Smith* 255.

In *Batchelor* v. *Kirkbride,* 27 *Fed. Rep.* 899, the question present in this case was put directly in question, and was pointedly decided; for the inquiry was whether the plaintiff was dispensed from producing a certificate if it had been refused by the fraud of the arbiter without collusion with the defendant. The jury was instructed at the trial, by Mr. Justice Bradley, that if such fraud was shown, the plaintiff was entitled to recover; and that ruling was upon reconsideration declared to be right, both by the distinguished judge before whom the case had been tried, and by his associate, Mr. Judge

Nixon. This case in itself is of great weight, and appears to be supported by the general current of American authority.

Nor does it seem to me that by the adoption of the foregoing theory of explication these arbitration clauses will be shown of any beneficial efficacy. The awards authorized by them will, for all useful purposes, be in truth finalities; they cannot be impeached for the want of skill or knowledge of the arbiter, nor on the ground that his judgments do not square with the judgments of other persons; such awards can be vitiated by fraud alone, and which must be proved to the satisfaction of a jury under a watchful, judicial supervision.

In fine, it appears to me that the foregoing construction of the clause of the contract in question rests upon the triple ground of legal principle, authority and public policy.

I think on this issue the plaintiff should have judgment.

MAGIE, J. (dissenting). It is conceded that the contract sued on does not impose on the owner an absolute obligation. By its terms his obligation to pay arises only upon the performance of a condition precedent, viz., the production by the builder of the specified certificate by the architect named.

A count on such a contract must show performance of the condition precedent, or a valid excuse for non-performance. Unless one or the other is shown, the count will be bad on demurrer. Since the count in question admits non-performance of the condition precedent, the sole question presented by the demurrer is whether it shows a valid excuse for non-performance.

Whether the builder, in such a case, has or has not a remedy in some other action or court, is unnecessary to settle. If he has been defrauded by the architect or the owner, or both, it is inconceivable that he should be without remedy. If, in the absence of fraud, his contract deprives him of a resort to an action, he cannot complain, for courts can only construe and enforce his own contract voluntarily made.

The excuse alleged in this count for non-performance of the condition precedent is, that the architect willfully and fraudu-

lently withheld his certificate. There is no allegation that the owner was connected with the act or omission of the architect other than the averment that the willful and fraudulent conduct of the architect had been brought to the owner's knowledge, but that he had not paid and had refused to pay the sum claimed.

The argument in support of the count was principally directed to the maintenance of the proposition that an architect's fraud in withholding such a certificate, with which fraud the owner was in no way connected, excused its production and fixed the owner's liability. The contention is that where the refusal is fraudulent, the contract does not require production.

But the terms of the contract make no exception whatever. Its stipulations require the production of the certificate at all events as a prerequisite to liability.

It is insisted, however, that an impossibility of performance, occasioned by the death of the architect, would excuse performance, and that, on similar grounds, an impossibility occasioned by his fraud will also excuse.

It is familiar doctrine that one who has contracted to do an act will be excused, if performance has become impossible by the act of God or of the law. But this doctrine has never been extended to impossibilities not created by *vis major*. He who engages that an act shall be done by another must procure that act to be done or submit to the consequences of failure. *Doughty* v. *Neal,* 1 *Saund.* 215; *Lamb's Case,* 5 *Rep.* 23, 5 *Vin. Abr.* 239; *Campbell* v. *French,* 6 *T. R.* 200; *Hesketh* v. *Gray, Say.* 185.

The contract before us, however, is not that the architect shall make a certain certificate, but that the owner shall be liable only in case he does make such a certificate. The architect's act is thus made a condition precedent.

Prof. Langdell, in his summary of principles established by the cases on contract selected by him (Vol. 2, p. 1075), shows that an act of God will not excuse the non-performance of a condition precedent, although it would excuse the performance

of the same act when regarded as a covenant or promise. This doctrine obviously applies whenever the act to be done as a condition precedent furnishes the *quid pro quo* for the liability to arise on performance. *Poussard* v. *Spiers*, 1 *Q. B. Div.* 410; *Stover* v. *Gordon*, 3 *M. & S.* 308; *Wells* v. *Calnan*, 107 *Mass.* 514. Mr. Justice Drake considered that the doctrine was also applicable to cases where the condition precedent is the performance of an act which will protect him who is to become liable from undue liability. *Roumage* v. *Ins. Co.*, 1 *Gr.* 110.

But it need not be determined whether the death of the architect would have excused the production of his certificate. In my judgment, an impossibility arising from such an intervention of higher power would have furnished such an excuse. But it cannot be argued therefrom that an impossibility produced not by the intervention of superior power, but by the misconduct of the very person whose act is stipulated for, will furnish a like excuse.

For, if it be admitted that the true theory of the doctrine which excuses performance when rendered impossible by *vis major*, rests rather on a construction of the contract as not including performance under circumstances not contemplated by the parties, than on a destruction of the obligation by a superior and resistless force subsequently intervening (as was suggested by Sir James Hannen, in *Baily* v. *De Crespigny*, *L. R.*, 4 *Q. B.* 180), yet the conclusion argued for does not follow. No violence is done to the contract if the case of the death of the architect be treated as excepted, because both parties must have known that such an event would render performance impossible. But where the parties expressly stipulate for an architect's certificate, it is obvious that they had in contemplation his conduct, including his ability to do the act, his willingness to do it, and his honesty in doing it. His conduct was thus expressly stipulated for, and to eliminate any part of that stipulation does violence to the contract.

It may be true that the builder would not have entered into this contract if it had expressed that the owner would not

become liable if the architect fraudulently withheld a certificate. It is probably equally true that he would have refused to sign if it had expressed that the owner would not become liable if the architect became unable or unwilling to make a certificate. Yet it is well settled that he has made precisely such a contract, and it seems to me to be a novel mode of discovering the construction of a contract—plain upon its face—which evades its direct meaning on the ground that if the parties had understood that meaning, they would not, in the judgment of the court, have made such a contract.

That the inability or unwillingness of the architect to make the certificate will not excuse its production has been established in the analogous case of insurance contracts, where the insurer's liability does not arise until the production of a certificate by some person designated or described in the contract. In the leading case in this state, the person thus designated was a clergyman, who declined to certify to the amount of loss because he had no such knowledge of the property consumed as would justify him in so doing. All the judges concurred in holding that the procuring of the required certificate was a condition precedent, and that its non-production was not excused by reason of the inability or unwillingness of the clergyman to make the certificate. *Roumage* v. *Ins. Co.*, 1 *Gr.* 110. The case was afterward overruled upon another point, but the doctrine for which I have cited it has not been questioned.

In that case the court approved and followed *Worsley* v. *Wood*, 6 *T. R.* 710, where it was held, in an action on such an insurance contract, that the "unjust and wrongful" refusal of the minister and church wardens (who, by the terms of the contract, were to certify to the loss) to make the certificate would not excuse its non-production.

The doctrine generally prevails in reference to such conditions contained in insurance contracts. *Johnson* v. *Phœnix*, 112 *Mass.* 49; *Columbia* v. *Lawrence*, 2 *Pet.* 25; *S. C.*, 10 *Id.* 5; *Wood's Fire Ins.*, § 416, and cases in note. Had courts applied to these analagous cases the rule of construction con-

tended for here, it is obvious they might have discovered other exceptions from the contract.

So it is to be noted that where courts thus construe conditions precedent contained in building contracts, they have not limited the exception to the case of fraud on the part of the certifying architect. Thus, in *Bowery Nat. Bank* v. *Mayor, &c.*, 63 *N. Y.* 336, the Court of Appeals of New York held an unreasonable withholding of such a certificate a sufficient excuse for its non-production. And in *Batchelor* v. *Kirkbride*, 9 *N. J. L. Jour.* 199, Mr. Justice Bradley is reported to have charged a jury, in an action involving such a contract, that if the architect withheld his certificate fraudulently or unreasonably and without collusion with the owner its production would be excused.

Such constructions obviously deprive the owner of the protection he sought to secure. For he required the builder to stipulate that no liability should exist until a person, in whom he had confidence, should certify to certain facts necessary to his protection. The builder, being master of the contract he should make, chose to submit to the requirement. But as now construed, the owner is made liable, not on the expressed judgment of the person selected by him, but on the verdict of a jury determining whether that person withheld his judgment honestly or fraudulently, reasonably or unreasonably. The owner may well say *non hæc in foedera veni.*

It is urged that the architect in such cases occupies a position like that of an arbitrator, whose award may be set aside for fraud. But it is settled that an award cannot be thus dealt with except where the submission has been made a rule of court, in which case the court exercises an equitable jurisdiction. *Sherron* v. *Wood*, 5 *Halst.* 7.

The result is, that I cannot yield to the construction of this contract which finds an exception to its terms in the case of an impossibility arising from the mere act of the architect, with which the owner had nothing to do.

The remaining question is whether the count exhibits any other excuse for non-production of the certificate.

Such an excuse would exist if the owner had prevented its production. Where performance of such a condition precedent has been prevented by the party who is to become liable on performance, prevention takes the place of performance, and the liability will arise. 2 *Langdell* 1087; *Addison Cont.*, § 326; *Buller N. P.* 164; *Hothan* v. *East India Co.*, 1 *T. R.* 638; 1 *Benj. Sales* 105 and note.

If, therefore, the owner has procured or induced the architect to fraudulently withhold the required certificate, his liability will arise without its production, for his act has thus prevented performance, and he will not be permitted to thus defeat his liability. This was the view of Mr. Justice Knapp in *Byrne* v. *Sisters, &c.*, 16 *Vroom* 214.

There has been some vacillation in the English decisions with respect to this doctrine. In *Milnor* v. *Field*, 5 *Exch.* 827, the withholding of such a certificate by fraud and collusion with the owner was held only to give a right to a cross-action.

In *Clarke* v. *Watson*, 18 *C. B., N. S.*, 278, it was intimated that if an owner colluded with a surveyor to withhold such a certificate, he could not shelter himself from liability under such wrongful act.

But in *Batterbury* v. *Vyse*, 2 *Hurlst. & C.* 42, a declaration on a building contract which stipulated for the production of an architect's certificate before liability should attach, was held to be good because it averred that its non-production was caused by the neglect of the architect in collusion with and by the procurement of the owner.

The doctrine of the case last cited must, in my judgment, prevail, for it imposes a just obligation on the owner, and prevents his gaining advantage from his own wrong.

Does the count in question show such an excuse?

The contention is that the owner's collusion with the architect may be inferred from the averment that the owner refused to pay after the conduct of the architect had been " brought to his knowledge." It is not averred upon what ground his refusal was put, and since it may have been on other grounds,

the charge does not necessarily import collusion or procure-
ment.

In my opinion, the demurrer was properly interposed to
this count.

It is proper to point out that the case before us does not
show the relation between the owner and the architect. When
the latter is so employed as to become the agent of the owner
with respect to the building, a new element is introduced
which may require a different result. The adverse cases in
other courts show, in some instances, the existence of such a
state of facts.