Commonwealth ex rel., Appellant, *v.* Evans.

Argued May 27, 1931. Before Frazer, C. J., Wall-
ing, Simpson, Kephart, Schaffer and Maxey, JJ.

446

*Wm. A. Schnader,* Attorney General, with him *Harris C. Arnold,* Assistant Deputy Attorney General, for appellant.—The case is controlled by the decision of this court in the Nelson-Pedley Case, 303 Pa. 174.

The contract is no more impossible of performance then than it was originally, before any work was done. The contract in such a case as the present one is not to do work on a specific and existing building, but it is to construct and complete a definite portion of a building, at the time not in existence. It is just as much a whole contract to deliver a completed construction as is the contract of a general contractor. It is absurd to say that a general contract is not rendered impossible of performance by destruction of the building, but that such destruction does make impossible the performance of the contract for constructing a heating system therein.

*R. Lawrence Coughlin,* with him *Maurice S. Cantor,* for appellee.—The contractor did not expressly assume any risk of loss by fire: Doster v. Zinc Co., 140 Pa. 147; Hay v. Baer, 48 Pa. Superior Ct. 231; Van Horn v. Kemena, 281 Pa. 579; Wilson v. Franklin, 282 Pa. 189; Duncan v. Pitts. etc. Assn., 282 Pa. 498; Hook v. Welch, 67 Pa. Superior Ct. 297.

An application of the rules of law applicable to the circumstances of this case places the loss for destruction by fire upon the Commonwealth: Smith v. Faust, 92 Pa. Superior Ct. 267; Wolf v. Altmeyer, 8 Pa. Dist. Rep. 408; Greenberg v. Shipbuilding Co., 277 Pa. 312.

OPINION BY MR. JUSTICE SIMPSON, June 27, 1931:

It is conceded that the written agreement involved in this case relates, as did that in Com. ex rel. v. Nelson-Pedley Construction Co., 303 Pa. 174, to work to be done in the construction, for the Commonwealth, of the first part of what is known as "South Office Building No. 2 in Capitol Park at Harrisburg," and that the two contracts, including therein the various other writings made part thereof, differ only in the names of the contractors, the consideration to be paid, and the character of the work to be done. Every point made in the argument of this case inhered in and was also made in the Nelson-Pedley Construction Company case; some, it is true, were urged more strenuously here than they were there, and some of those argued there were not presented here. It is clear, therefore, that what is now before us is a reargument of some of the points decided on that appeal, and, in this light, we have most carefully reviewed that opinion. We cannot, however, despite the interesting and elaborate argument for appellee, reach any other conclusion than as there expressed.

It is earnestly contended that our prior opinion did not properly construe section 37 of the general conditions of the contract, partially because we ignored the word "alone" in the second sentence, which, it is contended, qualified the language of the one immediately preceding. We did not, however, base our conclusion as to the contractor's liability on that section alone, but on a consideration of the whole contract. Appellee's contention would be clearly erroneous, however, even if only that section were to be considered. It provides that "The [contractor's] work in every respect, from the exe-

cution of the contract bond and during its progress until final acceptance, shall be under the charge and in the care of the contractor and at his risk. He shall properly safeguard against any and all injury or damage to the public, [and] to any property, material, or thing, except where stipulated otherwise in the specifications, and shall alone be responsible for any such damage or injury from his undertaking of this work to any person or persons or thing connected therewith."

We did not assert in our earlier opinion, nor could we have done so properly, that the word "risk" in the first sentence refers to fire risk only. It refers to any and every kind of risk to which such work is liable, before its final acceptance by the Commonwealth; the risk of the materials being stolen before or after delivery on the premises, or being injured, no matter from what cause, before or after they are incorporated in the building, etc., etc. This is a necessary conclusion from the fact that "the work in every respect......shall be under the charge and in the care of the contractor and at his risk," "during its progress and until final acceptance," and hence he must bear whatever loss results thereto before such acceptance. Any attempt of the Commonwealth to interfere with that work—save as specifically authorized by other provisions—would be a breach of appellee's contractual rights, and might justify a rescission of the contract.

This conclusion is not affected by the second sentence above quoted. It does not pretend to cut down what was stated in the first sentence; on the contrary, it more specifically expresses the contractor's duty and declares that he "shall alone be responsible" for any breach thereof. If we were to sustain his contention, he would not "alone be responsible," but responsibility would be cast on the Commonwealth at least partially. This second sentence directly expresses a duty to do certain things, and imposes a liability on the contractor if he does not do them, and this is so whether the words

"from his undertaking of this work" mean, as the preceding sentence would seem to imply, from the time of his undertaking it, or mean only the fact of his undertaking it. We may concede also, as appellee contends, that one of the "purposes of the paragraph was to clearly set forth that the defendant was an independent contractor and to establish his liability as such"; not his liability under other circumstances, however, but his liability on each contract as fixed and determined thereby, when read and considered in its entirety.

There being no language in the second sentence expressing an intention of relieving appellee from any liability which he had previously assumed, its proper construction falls within the general rule that where a clause or sentence shows on its face that it is intended to express more specifically a previously stated duty, or to declare a new one and impose a liability for failure to perform it, it cannot properly be construed as limiting the scope of either duty or liability: see West v. Lysle, 302 Pa. 147, 151. Appellee would have us say that the clause declaring that he "shall alone be responsible for any such damage or injury" means that he shall "be responsible [only] for any such damage or injury." Of course we cannot do this; the two things are essentially different, and the language actually used being clear, it must be given its plain meaning. Upon this ground we determined the contractor's liability on the former appeal, and upon it we reach the same conclusion here, and not upon the ground that these contracts, if they were doubtful in meaning, would have to be construed favorably to the public; as to which point, however, appellee may also consult, not unwisely, 2 Williston on Contracts, section 626, Joy v. St. Louis, 138 U. S. 1, 38, and the cases cited in each of them. In the present case, the language used is clear beyond cavil, and needs no rule of interpretation to aid in determining its meaning.

With a wealth of authority, appellee argues for the accuracy of the statements in the following paragraph from 3 Williston on Contracts, section 1965: "Though one who contracts to build is not discharged from liability on his contract because of the destruction of his first or other attempts to perform the contract, the situation is different where the contract is to do work on a building and the building is destroyed. Here the parties assumed the continued existence of the building upon which the work was to be done, and if this assumption ceases to be true, the obligation is discharged. Even though another similar building were erected, the contractor would not be bound to work upon that. It would be a different building and a variation of his contract."

That principle has no application to the situation here. This is not a contract "to do work on a building" but to construct a new building, which has not been destroyed; since work on it was begun, it always has been and still is in process of construction. The fire which caused this controversy did not destroy the building, but only injured or destroyed some of the materials in it. Recognizing this, appellee contends that the destruction of or injury to a substantial part of the work to be done by him, results in the same conclusion as if he had contracted to do work on a building which had been wholly destroyed. In answer to this, it is sufficient to say that the contention is in direct antagonism to the basic reason upon which the implied excusatory term of the contract is founded, viz., that the contractor cannot possibly fulfill the contract he made. The existing situation is that expressed in the first part of the quotation from Williston: "One who contracts to build is not discharged from liability on his contract because of the destruction of the first or other attempt to perform the contract." This is equally true irrespective of the number who so contract. None of them is "to do work on a building," which implies one existing; acting together, they are to

construct a new building. Logically,—though he has not argued and could not properly argue that the law is so,—appellee's contention cannot stop short of alleging that any unexpected delay, not caused by himself, must, at his option, result in relieving him from the fulfillment of his contract.

Nor is it a matter of any moment that the contract in the Nelson-Pedley Construction Company case was for a much larger sum of money than is involved in the two contracts held by this appellee. As we said in the former opinion, "the language controls," and this must be so whatever may be the amount involved. In the absence of something in the contract, or in the attending circumstances, from which a contrary conclusion can properly be reached,—and here there is nothing,— the same written language must have the same meaning no matter to what fraction of the total work a particular contract applies.

The situation, then, is that appellee and three other contractors agree with the Commonwealth to construct the building in accordance with the plans and specifications, and, when thus fully completed, to deliver it to the Commonwealth. Each of them agrees "to secure the completion of the various portions of the work in general harmony" with the others, to "properly connect and coördinate his work with theirs," and to continue so doing until the building is fully completed and accepted. Each agrees that his "work in every respect, from the execution of the contract bond and during its progress until the final acceptance, shall be under the charge and in the care of [himself] and at his risk." Each agrees that he will "properly safeguard against any and all injury......to any property, material or thing...... and shall alone be responsible for any such damages or injury from his undertaking of this work to any person or persons or thing connected therewith." *Each contract provides that the time of completion is to be extended if there is "any damage caused by fire," but none*

451452

*of them gives to the contractor any other or further relief should this provided-for contingency happen, and hence no other can be demanded: expressio unius est exclusio alterius.* It follows that the fire of October 3, 1930, was a risk which appellee and each of the other contractors expressly assumed, and there is nothing in the fact or extent of the fire which prevents any of them from fulfilling his express covenant. Notwithstanding the fire, each of them may do the work he covenanted to do, and, by working in harmony as they agreed they would, may complete the building (which was commenced at the time specified in their contracts and still exists), exactly as they contracted to do, and deliver it completed at the later date agreed upon by them and the Commonwealth since the fire. They do not assert that the Commonwealth has done or omitted to do anything which relieves them from liability, or which results in a waiver of its right to have them comply strictly with the terms of their contracts. It follows that appellee, as well as the others, must comply therewith, and that the loss caused by the fire to his work or material must be borne by him and not by the Commonwealth.

The declaratory judgment entered by the court below in this case is reversed and set aside, and it is now adjudged that the appellee, J. T. Evans, must bear the loss caused by the fire of October 3, 1930, to his work and materials, used or intended to be used by him in the fulfillment of his contracts, Nos. 2 and 4, dated July 1, 1929, for the heating and ventilation work and the plumbing and drainage work in South Office Building No. 2 in Capitol Park in the City of Harrisburg. The costs of these proceedings are to be paid by appellee.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

In this case I think that the loss caused by the fire in the Capitol Office Building should not either in law or morals fall upon the defendant, J. T. Evans. He had

entered into two contracts for constructing in this building the heating and ventilating and the plumbing and drainage systems, respectively. The heating and ventilating contract was in the amount of $175,498, and the plumbing and drainage contract, $121,622. When the building was 80% completed and Evans's work was 93% completed, fire destroyed practically the whole of the installed work of the appellee with which it came in contact, the damage being as stated in the petition for a declaratory judgment "many thousands of dollars."

The Commonwealth contends that Evans should repair at his own expense the damage the fire did to the work he installed; Evans contends that the Commonwealth should bear the loss. The court below in a declaratory judgment agreed with Evans.

I would sustain the court below. I think its ruling was correct in principle and in accordance with authority.

"Where the contract is for the performance of work on an existing structure which must continue to exist in order that the work may be performed, and such structure is not wholly under the control of the builder, as where repairs or alterations are to be made on a building, or where the contract is for the construction of a particular part of a house, the agreement is on the implied condition that the structure on which the work is to be done shall continue in existence, and if the structure is destroyed without the fault of the builder before the work is completed, he is excused from further performance; and not only is the owner precluded from recovering partial payments made to the builder as the work progressed, but it also seems to be the well settled rule that in the absence of any provision in the contract to the contrary the builder may recover on a quantum meruit for the value of his labor and materials expended in the partial performance of the work, unless there is a statutory provision to the contrary": 9 Corpus Juris, section 146, pages 807, 808.

Where the contract provides for the installation of work in a building the work then installed is treated as the owner's property and the contractor may recover for the work he has already performed, if the building or a portion thereof on which he is engaged is accidentally destroyed: Schwartz v. Saunders, 46 Ill. 18; Rawson v. Clark, 70 Ill. 656; Cleary v. Sohier, 120 Mass. 210; Hysell v. Sterling Coal & Mfg. Co., 46 W. Va. 158, 33 S. E. 95; Atlantic & D. R. Co. v. Delaware Const. Co., 98 Va. 503, 37 S. E. 13; Garretty v. Brazell, 34 Iowa 100; Young v. Chicopee, 186 Mass. 518, 72 N. E. 63; Dame v. Wood, 75 N. H. 38, 70 Atl. 1081; Bailey v. Brown, 9 Ohio Cir. Ct. 455, 6 Ohio Cir. Dec. 440; Wilson v. Knott, 3 Humphrey 473.

In Hollis v. Chapman, 36 Tex. 1, plaintiff had agreed to furnish the material and do the carpentry work necessary to finish a brick building for the defendants and to turn over the building complete by a given date for a specified sum. It was held that the destruction of the building by fire through no fault of the plaintiff before he had finished his work did not preclude him from recovering for the materials furnished and the work done. The court was of the opinion that such a contract was an apportionable one, and that as it was to furnish material and to do woodwork on houses in course of erection on the defendants' land, "every joist or sill that was placed in the wall, or piece of lumber nailed to the same, became inseparably connected with the building and a part of the realty, and therefore the property of [the defendants]; and in case of the destruction by accident or the act of God, the rule res perit domino will apply. ...... [The defendants] cannot look to anyone to make good their loss."

In Wolf v. Altmeyer, 8 Pa. Dist. Rep. 408, it was held that an architect who was employed to prepare plans for the remodeling of a building, and to superintend the work necessary therefor, is entitled to recover upon a quantum meruit for his services rendered before the de-

struction of the building by fire, the project of remodeling having been abandoned, and the further performance of his contract made thereby impossible through no fault of his. The court in its opinion said that those who did work or furnished materials in the building are entitled to be paid by the employer, the contractor or the owner.

As to the right of those who have done work on a building to recover when the building was destroyed by fire, see Wolfe v. Howese, 20 N. Y. 197; Cook v. McCabe, 53 Wis. 250.

In Weis v. Devlin, 67 Tex. 507, it was held that where one contracted to furnish the material and perform the labor in remodeling the dining room of a residence, and the building was destroyed by fire through no fault of the owner or the contractor, after the greater part of the necessary material and labor had gone into the building, the contractor was entitled to full compensation for the work done and material furnished before the fire.

In Haynes, S. & Co. v. Second Baptist Church, 88 Mo. 285, 57 Am. Rep. 413, where the plaintiff had contracted to make and put in place certain fixtures in the church, the work to be done by a certain date, and to be paid for in a gross sum upon its completion and acceptance, it was held that the plaintiff could recover for work and materials furnished though the building was accidentally destroyed by fire before the completion of his contract. The court held that the contract was not an absolute one to do the work at all hazards, but viewed it as dependent upon the implied condition that the defendant was to have and keep the building ready to receive the fixtures.

In New York, in the case of Niblo v. Binsse, 1 Keyes 476, 3 Abb. App. Dec. 375, it was held that where the plaintiff had agreed to furnish and put into a certain building in course of erection certain plumbing, to be completed by a specified date, and to be paid a certain

sum therefor, payable in installments during the progress of the work, and, of the last two installments, one when the work was all finished, and the other when the work was tested and found to be sufficient under the terms of the contract, it was held that the plaintiff was entitled to recover for the work actually performed, though the building was destroyed by fire before he had finished. In that case the court said: "It was his [the owner's] building, in his possession and under his exclusive control; and, as a material and substantive part of his contract, he was to have it in existence ready for the work, and continue it in existence, and in a proper condition for the work to be performed upon it, as long as it was necessary under the contract, or as long as the contract was continued in force by the consent of the respective parties. If one party agrees with another to do work upon his house or other building, the law implies that the employer is to have the building in existence upon which the work contracted for may be done. It is necessarily a part of the contract on the part of such employer, whether it is specified in it in terms or not."

I find nothing in the contract in question which prevents the application in this case of the universal rule as expressed by the foregoing authorities. I cannot interpret the word "risk" in paragraph 37 as taking this case out of the general rule. Every paragraph is a unit of thought and rhetoric. It deals with one point or with related points on the same subject. Webster's International Dictionary defines "paragraph" as "a distinct section or subdivision of a discourse, chapter or writing, whether one or many, that forms a rhetorical unit as dealing with a particular point or subject."

That paragraph 37 is a rhetorical unit is indicated by the fact that it had a distinct heading, to wit, "Contractor's Liability," and this entire paragraph in my opinion refers merely to the contractor's liability in respect to third persons. The subject-matter of this paragraph

is the builder's duty so to do his work as not to let that work become a source of danger to others and his liability in damages if that duty is breached. The contractor promised in this paragraph to safeguard against any and all injury and damage to the public or any property, material or thing, and it was made clear that he *alone* (i. e., not he and the State) would be responsible for any such damage resulting from his undertaking this work. The word "risk" as used in the fifth line of that paragraph clearly meant, so it appears to me, that the contractor exposed himself to the risk, i. e., the liability, of paying damages to any person who might be injured by reason of the fact that he undertook and did this work. This paragraph neither treats of nor even remotely refers to the contingency of the loss of this building by fire. This was not its subject-matter. The express and exclusive subject of this paragraph was the contractor's liability. "Liability" is defined in Webster's International Dictionary as "State or quality of being liable, as the liability of an insurer; that which one is under obligation to pay, or for which one is liable." "Liability" is defined in Abbott's Law Dictionary as "amenability or responsibility in law; the condition of one who is subject to a charge or duty which may be judicially enforced." Bouvier's Law Dictionary says "liability" is "responsibility; the state of one who is bound in law and justice to do something which may be enforced by action."

In paragraph 37 the subject of agreement therefore was the contractor's responsibility to persons who might be injured from his undertaking of the work which he had agreed to do. It was clearly set forth that he alone (i. e., not he and the Commonwealth) should be responsible for such damage or injury, and he made a promise that he would indemnify and save harmless the Commonwealth and all its officers, agents, or employees, from all suits at law in connection with this work.

It is a well-known canon of construction of contracts that "words must be interpreted in the reflected light of

the context in which they are found, and are not to be taken in their broadest sense if they are equally appropriate in a sense limited to the object and intent of the contract": 6 Ruling Case Law, section 232, page 842. See Chism v. Schipper, 51 N. J. L. 1, 16 Atl. 316.

Interpreting the word "risk" in the light of its context and considering the fact that the subject of the paragraph in which the word "risk" appears was the contractor's liability, i. e., his responsibility, to others, I think it clear that the word "risk" as used in paragraph 37 does not take the case before us out of the general rule that the one who engages another to do a piece of work upon a building must, in the event the building is destroyed in whole or in part by fire, pay for the work done. There is always a risk of injury to others when one person undertakes to do work on another's property, and when the owner says to the contractor, "this work is at your own risk, you alone will be responsible for injury from your undertaking the work to any person or thing connected therewith," this clearly does not mean that if the contractor's work is destroyed by fire, or earthquake, the person who did the work should not be compensated for the work then already done.

In Turner v. Robbins, 276 Pa. 319, 322, this court interpreted the word "risk" in a construction contract as meaning that the contractor was responsible for injuries suffered by one who fell into a pit which the contractor was excavating.

In the majority opinion the case of West v. Lysle, 302 Pa. 147, is cited as authority for the proposition that where a clause or sentence shows on its face that it is intended to express more specifically a previously stated duty, or to declare a new one and impose a liability for failure to perform it, it cannot properly be construed as limiting the scope of either duty or liability. I do not understand the appellee's contention to be that the second sentence of pargraph 37 relieved appellee from any liability he had assumed in the first sentence. The

first sentence simply made the general statement that the work in every respect was under the charge and care of the contractor and at his own risk, and the second sentence merely amplified or made more clear what was meant by the preceding sentence. The second sentence expresses in particular and concrete language what the first sentence expresses in general and abstract language. It is as though the phrase "that is to say" were written between the word "risk" and the word "He," so the paragraph should read: "The work in every respect ......shall be under the charge and in care of the contractor and at his risk, that is to say, he shall properly safeguard against any or all injury or damage to the public,......and [he] shall alone be responsible for any such damage or injury from his undertaking of this work," etc. The second and the third sentences simply amplify and make clear the meaning of the first sentence.

It is not unusual in paragraphs in legal papers and elsewhere to use general words in the opening sentence and to amplify these general words in the succeeding sentences. In such case the succeeding particularizing words are regarded as possessing synonymous explanatory import of the preceding general words. "The court will restrict the meaning of general words by more specific and particular description of the subject-matter to which they are to apply. ...... General expressions will be restricted by particular descriptions or additions following them": 13 Corpus Juris, page 537, section 501.

"Where there is a repugnancy between general clauses and specific ones, the latter will govern; and even if there is no actual repugnancy if the words of the contract are taken literally, yet when from the whole instrument it appears that the purpose of the parties was solely directed towards the particular matter to which the special clause or words relate the general words will be restrained. ...... It has been laid down broadly that general words in any contract relating to a particular subject shall be construed as meaning things of the

same kind as the particular matters referred to": 2 Williston on Contracts, section 619, page 1200.

From both the context of paragraph 37 and its heading, I think it is clear that the word "risk" as used therein means only the contractor's assumption of responsibility or liability toward others for damages to others by his undertaking of the work contracted for.

Furthermore, this contract was made on the forms prepared by the Commonwealth. It is the settled law of Pennsylvania and a well-known rule of interpretation of contracts everywhere, that where there is any doubt as to the interpretation of any part of a written contract or if a provision is susceptible to two meanings, all doubt is to be resolved against the party who prepared the contract and a construction most favorable to the other party will be adopted.

"Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage": 13 Corpus Juris, section 516, page 544. See Van Horn v. Kemena, 281 Pa. 579; Duncan v. Pittsburgh-Florida Fruit Growers Assn., 282 Pa. 498; and Hook v. Welch, 67 Pa. Superior Ct. 297.

In the majority opinion it is stated that this rule is not applied to contracts in which the public is a party. I believe the only contracts to which this rule is held not to be applicable are contracts involving the construction of grants of public franchises or the conveyances of public rights.

In the majority opinion, 2 Williston on Contracts, section 626, is cited, wherein it is set forth: "Grants of franchises and contracts affecting the public interest are

to be construed liberally in favor of the public." The leading case cited under this section is Joy v. St. Louis, 138 U. S. 1. This was a case which involved the construction of covenants on the part of one railroad to permit other railroads to use a certain right-of-way it possessed between a park and the terminus of its line in a city. Judge BLATCHFORD in his opinion in that case said at page 47: "Considerations of the interests of the public are held to be controlling upon a court of equity, when a public means of transportation, such as a railroad, comes into the possession and under the dominion of the court."

In Donnelly's Law of Public Contracts, section 172, it is stated: "Public contracts are no different from private contracts. The obligation of each endures under the law, and the former are governed by the same canons of interpretation as apply to contracts between natural persons."

In Smoot's Case, 15 Wallace 36, the United States Supreme Court said, at page 47: "In approaching the inquiry, let us endeavor to free ourselves from the consideration that the government was one party to the contract, for we hold it to be clear that the principles which must govern the inquiry are the same as if the contract were between individuals."

Another canon of construction of contracts is the following: "The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other": 13 Corpus Juris, section 511, page 540.

I think the just and reasonable interpretation of the contract between these two parties is that Evans, the contractor, did not assume the risk of having his work destroyed by fire. The responsibility for protecting the building against fire was certainly not his. He had no

reason to believe that that risk was his; he had every reason to believe to the contrary. Paragraph 31 of the "General Conditions" of the contract contains this sentence: "It will not be necessary for the Contractor to maintain insurance on any material incorporated in the building." If this sentence was not well calculated to lull the contractor into the belief that once he had incorporated his materials and work into the building he need not concern himself about the possible destruction of that material by fire, but that he would be compensated for the material and work he had incorporated into the building, it is difficult to conceive of any language that would more clearly convey that reassuring thought.

The majority opinion, after quoting from section 1695 of 3 Williston on Contracts, emphasized in appellee's paper book, says: "That principle has no application to the situation here. This is not a contract to do work on a building, but to construct a new building which has not been destroyed since work on it was begun, and always has been and still is in process of construction." I think Evans's contract was not "to construct a new building," but "to do work on a building." A heating and ventilating system and a plumbing and drainage system cannot be constructed in a building unless there is a building ready to receive them. The Nelson-Pedley Company had the contract for what appellant calls in its paper book "the erection of the principal portion of the building itself." Evans's contract was entered into on the implied condition that this principal portion of the building would be erected and in the language above quoted from 9 Corpus Juris, "on the implied condition that the structure in which the work was to be done shall continue in existence." I think the phrase "continue in existence" means to continue in existence in the form and condition contemplated when the contract was entered into. If the building, wholly or partly, is destroyed by fire, the form and condition is substantially altered and the contractor is no more obligated to accommodate

his work to the changed conditions without compensation than he would be if the architect had ordered radical changes in the building which would require the tearing out of a large portion of the contractor's work. The "General Conditions" of the contract provide: "Work and material of a character for which no price is named in the agreement shall be considered as extra work which shall be done by the contractor upon a written order of the secretary at a price to be previously agreed upon in writing by the contractor and the secretary." Certainly a duplication of work already done and material already furnished by the contractor ought to be classed as "extra work" for which the contractor should be compensated.

The cases first cited in this opinion from nine American jurisdictions hold that work incorporated in a building is treated as the owner's property, and if the building or any portion of it is accidentally destroyed the contractor may recover for the work he has already done. It surely seems illogical and unjust to hold that a contractor can recover for the work he has done if one hundred per cent of the building has been destroyed by fire, but he cannot recover if any portion of the building constituting less than one hundred per cent is destroyed.

Williston in volume 3, section 1965, of his work on Contracts, makes a distinction between the recovery rights of one who contracts *to erect* a building and whose attempts to carry out the contract are frustrated by fire, and the recovery rights of one who contracts *to do work on* a building, and whose attempts to carry out the contract are similarly frustrated. Evans clearly comes within the latter class. When the Nelson-Pedley Co. was provided with the ground for a building it was obligated by its contract (unless paragraph 31 of the General Conditions, supra, which was in all the contracts relating to South Office Building No. 2 in Capitol Park, excused it) to construct a building; while, on the other hand, Evans had to have a building ready to receive his

installations before he could perform his contract. This building was in part destroyed by fire and the fire destroyed part of Evans's installation. Williston on Contracts, volume 3, section 1976, in discussing incompleted work destroyed by fire, says: "When goods are destroyed after the property in them has passed to the defendant, he must pay for those goods, although the seller's performance is still incomplete and no advantage has accrued to the buyer from the partial performance." In my opinion, Evans is entitled to be compensated for the work he had done and for the materials which he had furnished and incorporated into the building, and he is under no obligation to duplicate at his own expense the incorporated work and material destroyed by fire.

I would affirm the judgment of the court below.

The views I have herein expressed are in my opinion equally applicable to the following cases this day decided: Com. of Pa. ex rel. William A. Schnader, Attorney General, v. Otis Elevator Co., and Com. of Pa. ex rel. William A. Schnader, Attorney General, v. Evelev. I would affirm the judgment of the court below in these two cases as well as in the case I have herein discussed.