VALERIE HEBERT, administratrix, *vs.* PATRICK H. DEWEY.
PATRICK H. DEWEY *vs.* VALERIE HEBERT, administratrix.

Hampshire.   September 19, 1905. — April 7, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING,
BRALEY, & SHELDON, JJ.

*Practice, Civil,* Cross action, Election of remedy.   *Contract,* Performance and breach, Construction, Building contracts.   *Insurance.*

Where the defendant in an action of contract brings a cross action in which the matters relied on are substantially the same as matters set up in his answer and declaration in set-off in the first action, he may be ordered by the presiding judge to elect whether he will rely on these matters under his declaration in set-off or as a defence under his answer, or will waive this part of his defence and his declaration in set-off and stand upon his declaration in the cross action, and, if he elects to take the benefit of these matters under his declaration in set-off and his answer, a verdict against him should be ordered in the cross action.

A contract for building a house provided for three payments to be made at different stages in the progress of the work, and a fourth after the completion of it. Then followed this proviso : " That in each case of the said payments, a certificate shall be obtained from and signed by said N., architect, to the effect that the work is done in strict accordance with drawings and specifications, and that he considers the payment properly due; said certificate, however, in no way lessening the total and final responsibility of the contractor; neither shall it exempt the contractor from liability to replace work, if it be afterwards discovered to have been done ill, or not according to the drawings and specifications, either in execution or materials." *Held,* that under this clause certificates signed by the architect during the progress of the work at the times provided for the part payments, certifying that at the time of each signing a certain sum

of money was due to the contractor, were not merely a means to enable the builder to obtain money on account, but in an action by the contractor on the contract were conclusive evidence in his favor as to his performance of the contract during the time covered by the certificates in all matters known to the architect, the liability of the contractor left open by the language of the provision being confined to deficiencies "afterwards discovered."

In an action by a contractor against a house owner on a contract for building the house, if by the terms of the contract a certificate of the architect is required before the final payment, the plaintiff, on showing that after a complete performance of the contract he applied to the architect for the final certificate and that the architect wilfully and fraudulently refused to give it, may recover the full contract price as if the provision requiring the architect's certificate was not in the contract.

Discussion by KNOWLTON, C. J., of the greater strictness in requiring the production of certificates as conditions precedent under contracts of insurance than under building contracts.

Whether in an action on a contract of insurance the production of a certificate as a condition precedent to recovery would be required if the person who was to give the certificate was incapacitated from acting or fraudulently refused to act, *quaere*.

In an action by a contractor against a house owner on a contract for building the house, if by the terms of the contract a certificate of the architect is required before the final payment, the parties are bound by the decision of the architect made in good faith, and, if the architect acting in good faith thought that the work was not properly done and the contract was not substantially performed and refused the certificate for that reason, the plaintiff cannot recover on showing that the work was done and the contract was performed and that the certificate ought to have been given.

CROSS ACTIONS OF CONTRACT, described in the first paragraph of the opinion, both upon a contract in writing dated June 20, 1893. Writs dated respectively September 7, 1895 and August 15, 1902.

In the Superior Court the cases were tried before *Holmes*, J., who made the rulings stated in the opinion. In the first action the jury returned a verdict for the plaintiff in the sum of $1,100 ; and the defendant alleged exceptions. In the second action the jury by direction of the judge returned a verdict for the defendant ; and the plaintiff in that case, being the defendant in the first case, alleged exceptions.

The opening portion of the contract sued upon, which contained all the provisions material to the exceptions in the first case, was as follows :

"Articles of agreement,

"Made and entered into this Twentieth (20) day of June, A. D. One Thousand Eight Hundred and Ninety-Three,

" By and between Joseph Hebert of Northampton, Mass., as the party of the first part, hereinafter called the Contractor,

" And P. H. Dewey, of Northampton, Mass., as the party of the second part, hereinafter called the Proprietor.

" Witnesseth, first. The said party of the first part does, hereby, for himself and for his heirs, executors, administrators or assigns, covenant, promise and agree to and with the said party of the second part, his heirs, executors, administrators or assigns, that he, the said party of the first part, his heirs, executors, administrators or assigns, shall and will, for the consideration hereinafter mentioned, on or before the fifteenth day of November, in the year One Thousand Eight Hundred and Ninety-three, well and sufficiently erect, finish and deliver in a true, perfect and thoroughly workmanlike manner, all the different branches of work except the Mason Work, Stone Work, Plumbing, Heating and Grading required in the erection and completion of a Dwelling House for the party of the second part, on ground situated and being on Crescent Street, Northampton, Mass., agreeably to the Drawings and Specifications prepared for the said works by F. S. Newman, architect, to the satisfaction and under the direction and personal supervision of said F. S. Newman, architect, and will find and provide such good, proper and sufficient materials, of all kinds whatsoever, as shall be proper and sufficient for the completing and finishing of all the different branches of work required in the erection and completion of said buildings, as shown in the Drawings and mentioned in said Specifications, being signed by the said parties, within the time aforesaid for the sum of Sixty-two Hundred Dollars.

" Second. The said party of the second part does hereby for himself and for his heirs, executors, administrators or assigns, covenant, promise and agree to and with the said party of the first part, his heirs, executors, administrators or assigns, that he, the said party of the second part, his heirs, executors, administrators or assigns, will and shall, in consideration of the covenants and agreements being strictly executed, kept, and performed by the said party of the first part, as specified, will well and truly pay, or cause to be paid, unto the party of the first part, or unto his heirs, executors, administrators or assigns,

the sum of Sixty-two Hundred Dollars, lawful money of the United States of America, in manner following:

" First payment of Fifteen Hundred ($1500.00) when frame is up, boarded and roof on.

" Second payment of Fifteen Hundred Dollars ($1500.00) when ready to plaster.

" Third payment of Twelve Hundred ($1200.00) Dollars when ready for Hardware.

" Fourth payment of Two Thousand ($2000.00) Dollars.

" Being the balance due as per this contract when the building is all complete, the keys delivered, and when all the Drawings and Specifications have been returned to F. S. Newman, Architect.

" Provided, That in each case of the said payments, a certificate shall be obtained from and signed by said F. S. Newman, Architect, to the effect that the work is done in strict accordance with Drawings and Specifications, and that he considers the payment properly due; said certificate, however, in no way lessening the total and final responsibility of the Contractor; neither shall it exempt the Contractor from liability to replace work, if it be afterwards discovered to have been done ill, or not according to the Drawings and Specifications, either in execution or materials; and provided further, that in each case a certificate shall be obtained by the Contractor, from the Clerk of the office where liens are recorded, and signed and sealed by said Clerk, to the effect that he has carefully examined the records and finds no liens or claims recorded against said works, for or on account of said Contractor or any sub-Contractor; neither shall there be any legal or lawful claims against the Contractor, in any manner, from any source whatever, for work or materials furnished on these works; and further whenever required a receipt or release of liens shall be obtained by the Contractor — from each sub-contractor showing that there are no claims against him and releasing him from all such claims on account of materials furnished or work done in said building."

The case was argued at the bar in September, 1905, before *Knowlton*, C. J., *Lathrop, Hammond, Loring, & Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*S. S. Taft,* for Dewey.

*J. C. Hammond,* for Hebert.

KNOWLTON, C. J.　The first of these actions was brought by the plaintiff's intestate to recover upon a contract in writing for building a house for the defendant, and also for extra work done in connection with the contract. The second is a cross action, brought to recover damages for the non-performance of the contract, and also for money lent to the defendant, and money had and received by the defendant to the plaintiff's use. In the opinion of the judge, it appeared at the close of the evidence that the matters relied on in the cross action were substantially the same as those set up in the answer and in the declaration in set-off in the first action. The defendant in that action was therefore ordered by the judge to elect, whether he would rely upon these matters as a defence under his answer, or would waive this part of his defence and stand upon his declaration in the cross action. He elected to take the benefit of them under his answer, and a verdict for the defendant was accordingly rendered in the cross action. Assuming the facts to be as held by the judge, this order was proper under the rules stated in *Cox* v. *Wiley,* 183 Mass. 410. The facts are not shown to be otherwise. The defendant now concedes that, if there was no error in other parts of the case, he was not aggrieved by the order to elect. The exception to this order is overruled.

The first important exception relates to the rulings and refusals to rule in regard to certificates, given to the plaintiff's intestate by the architect, upon which payments were made by the defendant under the contract. The contract provided for three payments to be made at different stages in the progress of the work, and a fourth after the completion of it. Then followed this proviso: "That in each case of the said payments, a certificate shall be obtained from and signed by said F. S. Newman, architect, to the effect that the work is done in strict accordance with drawings and specifications, and that he considers the payment properly due; said certificate, however, in no way lessening the total and final responsibility of the contractor; neither shall it exempt the contractor from liability to replace work, if it be afterwards discovered to have been done ill, or not according to the drawings and specifications, either in execution or materials," etc.

The third certificate, in its substantive parts, is as follows: " This is to certify that under the terms of the contract dated, . . . Mr. Joseph Hebert, contractor for building your house, is entitled to the third payment amounting to twelve hundred dollars." The first and second certificates were in the same form; but the architect refused to give the fourth and final certificate, and the plaintiff's intestate never obtained it. At the trial the evidence was conflicting upon all the questions in issue, and there was much dispute as to whether the plaintiff's intestate had performed the contract, or had done improper work and used improper materials in violation of it. The judge instructed the jury, in substance, that so far as the work and materials which had previously been supplied were known to the architect at the time of giving one of these certificates, the certificate would be conclusive upon the defendant as to the quality and fitness of the work and materials, and it would not afterwards be open to the architect or the owner to question it. He treated each of these certificates as a final determination, in favor of the contractor, that the contract had been properly performed up to that time, in all parts of which the architect had knowledge.

It is well settled that, in the absence of fraud, or such mistake as prevents him from exercising his judgment upon the case, the parties are bound by the certificate of an architect, made under the authority of a building contract like that now before us. His position is like that of an arbitrator, to determine the particular matter submitted to him. *Palmer* v. *Clark,* 106 Mass. 373, 389. *Flint* v. *Gibson,* 106 Mass. 391. *Robbins* v. *Clark,* 129 Mass. 145. *National Contracting Co.* v. *Commonwealth,* 183 Mass. 89. *Norcross* v. *Wyman,* 187 Mass. 25. *White* v. *Abbott,* 188 Mass. 99.

The only question of difficulty in this part of the case arises from the peculiar language of the contract as to the effect of the certificates. They are referred to as " in no way lessening the total and final responsibility of the contractor," etc. This language furnishes ground for an argument that the certificates given before the completion of the work were intended to be merely intermediate or progress certificates, for the benefit of the builder, given to enable him to obtain payments on account, during the progress of the work. Such certificates are not con-

clusive as to the final payment, nor upon a claim for damages, nor on a *quantum meruit.* 1 Hudson, Building Contracts, 288. *Tharsis Sulphur & Copper Co.* v. *M'Elroy,* 3 App. Cas. 1040. *Ford* v. *St. Louis, Keokuk & Northwestern Railroad,* 54 Iowa, 723.

While the matter is not free from doubt, we are inclined to hold that these certificates were intended to be something more than progress certificates, and that they are to be held final in their determination of all matters which were then within the knowledge of the architect. In the first place, the contract makes no distinction in this particular between the certificates to be given before the work is completed and the final certificate. Then the special provision as to the effect is, that they shall not relieve the contractor from liability for inferior work, " if it be afterwards discovered to have been done ill, . . . either in execution or materials," etc. Inasmuch as the general rule would make such certificates conclusive, we are of opinion that they should be held to leave the claims open only as to deficiencies that are afterwards discovered, and that this exception of the defendant should be overruled.

The defendant contended that the plaintiff could not recover under the contract because her intestate failed to obtain from the architect a certificate that the final payment was due. The question is whether a sufficient justification was shown for this failure. The instruction to the jury on this point was as follows : " If the defendant's architect capriciously withheld the final certificate and capriciously led the contractor to believe that nothing more remained to be done to entitle him to such certificate, the contractor is thereby relieved from his obligation to secure the certificate." This was in accordance with the plaintiff's request, except that the judge left out the word " fraudulently " which was used in the request with " capriciously." The law bearing upon this part of the case has not been definitely settled in this Commonwealth. There is a class of cases arising under policies of insurance and other similar contracts, in which it is held that the procurement of the certificate, called for by the contract, is a condition precedent to the plaintiff's recovery. *Johnson* v. *Phœnix Ins. Co.* 112 Mass. 49. *Audette* v. *L' Union St. Joseph,* 178 Mass. 113, and cases there cited. The reason why it is not open to the plaintiff in these

cases to show that he could not obtain the certificate, is because
the nature of the contract and the purpose of the requirement
of a certificate are such as to make the recovery conditional
upon the presentation of the paper, for the purpose of afford-
ing the insurer an assurance against fraud, and giving him addi-
tional evidence that there is a legal liability. *Johnson* v. *Phœnix
Ins. Co.*, *ubi supra*. The promise is to pay only upon the exist-
ence of conditions shown by a particular kind of proof, which
the parties prescribe as the only evidence that will be deemed
sufficient to establish the fact. In such contracts the plaintiff
takes upon himself the obligation to furnish the required proof,
and assumes the risk of whatever difficulty there may be in pro-
curing it. Whether a contract is of this kind is a question of
construction, dependent upon the meaning of the parties, as
ascertained from the writing. A provision for a certificate by
an architect, in a building contract, stands differently. The
architect is the agent of the owner, to perform an act for the
convenience of both parties, in regard to a matter with which
he is directly connected as an employee. It is assumed by the
contracting parties and implied in the contract that he will do
his duty, and will act in good faith in determining whether a
certificate should be granted. In cases under provisions like
the one before us, it is everywhere held that the contractor
may recover without a certificate, if the circumstances relieve
him from the obligation to obtain one. What circumstances
are sufficient for this purpose is the only question. If the
owner wrongfully interferes to prevent the giving of a certifi-
cate, it is universally held that this will entitle the contractor
to recover without it. *Beharrell* v. *Quimby*, 162 Mass. 571, 575.
*Whitten* v. *New England Live Stock Ins. Co.* 165 Mass. 343, 345.
*Batterbury* v. *Vyse*, 2 H. & C. 42. *Whelen* v. *Boyd*, 114 Penn.
St. 228. Many of the authorities are to the effect that any
wrongful refusal of the architect to give a certificate will en-
title the contractor to proceed without one. In some of the
cases it is said that if the architect unreasonably refuses to
give a certificate it is enough. *Nolan* v. *Whitney*, 88 N. Y.
648. *Flaherty* v. *Miner*, 123 N. Y. 382, 390. *Thomas* v. *Stew-
art*, 132 N. Y. 580. *Crouch* v. *Gutmann*, 134 N. Y. 45. *United
States* v. *Robeson*, 9 Pet. 319, 327. In others it appeared that

he refused " dishonestly and arbitrarily," or "wilfully and fraudulently," or "capriciously." *Bentley* v. *Davidson*, 74 Wis. 420.   *Chism* v. *Schipper*, 22 Vroom, 1.   *Bradner* v. *Roffsell*, 28 Vroom, 32; *S. C.* 28 Vroom, 412.   *Badger* v. *Kerber*, 61 Ill. 328. In *Beharrell* v. *Quimby*, 162 Mass. 571, 575, there is an implication that, if the architect "had fraudulently or capriciously withheld a final certificate," the plaintiff might have recovered without it.

In the present case there was evidence from which the jury might have found that, after a complete performance of the contract, the plaintiff's intestate applied to the architect for the final certificate, and he wilfully and fraudulently refused to give it.   It is plain that, in making the contract, it was understood between the parties that the architect would act in good faith in the performance of this part of his duty.   In legal effect, the contract is as if their understanding in this particular had been written into it, as one of its terms.   If, under such an agreement, after the full performance of the contract, the architect wilfully and fraudulently refuses to act, or dies, or becomes disqualified, and there is no provision for such a case, the question arises whether the contractor is entitled to receive the contract price, the fact of performance being shown in some other way, or whether the entire contract falls to the ground, and the parties are left to enforce their rights under a *quantum meruit.* It is a general rule that if an implied condition that fails is of the essence of the contract, and enters largely into the consideration, in such a way that there can be no substantial performance under the changed conditions, the whole contract will fail, and the parties may have reasonable compensation for what they have done in reliance upon it.   *Butterfield* v. *Byron*, 153 Mass. 517.   But the provision in this case for the ascertainment of their rights, in reference to the construction of the building called for by the contract, is of a different kind.   It is a part of the machinery provided for the ascertainment and adjustment of their rights in reference to the matters to which the contract relates.   It is provided to be used only upon an implied condition that it will be available for use.   If, through the death or incapacity of the architect, or his wilful refusal to act, it becomes impossible to adopt this method of determining the rights

of the parties, other means may be adopted, on the ground that this no longer remains as an essential term of the agreement. In all substantial particulars the contract is complete without the provision for obtaining a final certificate, and, in the case supposed, it should be treated as if the provision were stricken from the contract. In *Whitten* v. *New England Live Stock Ins. Co.* 165 Mass. 343, 345, this was held to be the effect of an interposition by a party to prevent that from happening, upon the happening of which he was to make a payment under a contract.

A provision like the one before us in this kind of contract, where the substance of the consideration on one side is valuable property in the form of labor and materials, is materially different from the provision in the policies of insurance to which we have referred. In these contracts for insurance a small sum is paid on one side to obtain indemnity from the possible consequences of a risk which is very unlikely to cause damage. The compensation is to be paid only for genuine losses, resulting from the risk insured against. Satisfactory proof of their character, as coming within the policy, is of the very essence of the contract. On that depends the obligation of the insurer to pay a very large sum for which only a small consideration is given. In view of the ease with which frauds may be practised, the parties sometimes prescribe a method of establishing the validity of the claim, which they make essential to its recognition. They say, in effect, that the policy shall apply only to claims established in this way, and they thereby make the production of the prescribed certificate of the very essence of the contract. It is only to contracts which are construed as showing such a strict agreement that this rule is applied. Whether any of these insurance contracts should be held to require the production of a certificate as a condition precedent to recovery, if the person who is to give it is incapacitated from acting, or fraudulently refuses to act, is a question which we need not consider in this case. In regard to such questions the rights of the parties depend upon what is their meaning and intention as shown by their contract, as applied to the subject with which they are dealing. We do not intend to extend the doctrine of the insurance cases beyond the statements in our decisions.

In all the cases that we have cited under building contracts it is held that there may be a recovery upon the contract, where the contractor's failure to obtain the architect's certificate showing performance of it is caused by the fraud or intentional misconduct of the architect. In *United States* v. *Robeson*, 9 Pet. 319, 327, a case where the contract entitled the plaintiff to payment on the certificate of a colonel, commanding a party, Mr. Justice M'Lean said in the opinion : " Had the defendant proved that application has been made to the commanding officer for the proper certificates, and that he refused to give them, it would have been proper to receive other evidence to establish the claim." In *Whelen* v. *Boyd*, 114 Penn. St. 228, 232, the court said of the defendant, in reference to the refusal of a certificate, " The law is settled that he cannot take advantage of his own or his agent's wrong." In *Baltimore & Ohio Railroad* v. *Polly*, 14 Gratt. 447, 464, this language is used, in reference to the same subject: " A principal cannot take advantage of the fraud of his agent, even though he did not actually participate in the perpetration of the fraud." Other cases, indicating that, where the plaintiff is excused from obtaining such a certificate, the recovery may be on the contract itself, are *Herrick* v. *Vermont Central Railroad*, 27 Vt. 673, 681, and *Batchelor* v. *Kirkbride*, 26 Fed. Rep. 899. We have found no case of this kind in which it is held, on a failure to obtain an architect's certificate after performance of a contract, that the contract lost its force, and that the parties were left to their rights upon a *quantum meruit.*

In a case like the present, we are of opinion that, if an architect, after the completion of a contract, wilfully and without excuse refuses to act at all, or if he acts dishonestly and in bad faith, and the contractor is thereby prevented from obtaining a certificate, the contractor may proceed with his action without it. Such action or refusal to act would leave the provision for obtaining an architect's certificate of no effect upon the rights of either party.

The judge followed the instruction quoted with other instructions which went too far in relieving the plaintiff from obligation to obtain the certificate. He said : " If the fact was that after Mr. Hebert had finished the contract so far as he thought

it required him to do work and furnish material, and when he called upon Mr. McCauley or Mr. Newman to come there and see whether the thing was right, and, if it was, give him a certificate, and if not, tell him what work was to be done and he would do it, Mr. McCauley went there and pointed out where things were necessary to be done and then the certificate could be given, and Guinan or Mr. Hebert caused those things to be done, and the doing of those things was said to be all that was required, and they were done, and then Mr. Newman [the architect] refused to give the certificate or to come to the premises to look them over and see whether in these respects the added matters were sufficiently done, and they were sufficiently done, then the architect's certificate would drop out of sight and not be required." The facts here stated would be evidence from which the jury might find that the plaintiff's intestate was excused from obtaining the certificate, but it cannot be said as matter of law that they would excuse him. The architect, in the meantime, might have discovered other things which justified him in refusing the certificate.

After telling the jury that certain conduct of Dewey, the defendant, would not be fraudulent in reference to the certificate, he added, "It would still have to be shown by the plaintiff that the certificate ought to have been given, and if it was shown that the work was done and the contract substantially performed, then the fact that the certificate was not given was not of any account." This last proposition was not correct in law. If the architect, acting in good faith, thought that the work was not properly done and the contract was not substantially performed, and refused the certificate for that reason, the mere fact that the certificate ought to have been given and that the work was done and the contract was performed would not entitle the plaintiff to recover without the certificate. The parties were bound by the decision of the architect made in good faith. The judge also gave the following instruction: "Under the law as I have instructed you, I do not know as it would make any difference what was the conduct of Mr. Dewey, whether he tried improperly to get the architect to withhold the certificate, because if the work was properly done, then the certificate ought to have been given.

If the work was not properly done and was so far improperly done as to render it no performance of the contract by Hebert, then the certificate would not avail. Perhaps it is only in the event that although the contract was not performed, still there were particulars in which it could be compensated for and certain things could be done by Mr. Dewey to remedy it, in that event, but even in that event I don't see that the certificate would make any difference." Because these instructions give too little effect to the requirement that the contractor shall procure a certificate from the architect before he is entitled to payment, there must be a new trial. We deem it unnecessary to discuss other questions raised by the bill of exceptions. In the second action the exceptions are overruled. In the first action the entry will be

*Exceptions sustained.*