PLUMB *v.* HECLA CO.

1. NEGLIGENCE—MASTER AND SERVANT—LICENSEE—MAINTENANCE
   OF SWITCHING OR SPUR TRACKS.

> Plaintiff was injured on a short transfer track from the Michigan Central tracks to the factory of the Hecla Company. The track was in an unsafe condition for lack of fish plates, which had been removed, causing the rails to spread and the engine to run off the track. The trains and engines of the Michigan Central Railroad Company, whose engine and crew were switching a car for the Hecla Company at the time of the injury, were accustomed to use the tracks daily for such purposes. *Held,* that the facts tended to show an implied invitation from the owner of the transfer track to use it.

2. SAME.

> It appearing that the Hecla Company employed the section crew at work on the road, and that they removed the missing plates, the question of the duty to maintain the tracks was for the jury.

3. SAME.

> The fact that the plaintiff was returning on the railway track of defendant to do work for it, and was not then engaged in its behalf, does not relieve the defendant of its duty.

4. PLEADINGS—VARIANCE.

> Proof that the defendants made the track unsafe by removing the fish plates, sufficiently supports the allegations of the declaration that the defendants failed to maintain the track in safe condition, and is not open to the objection that the charge in the declaration was a failure to furnish fish plates.

5. SAME—EVIDENCE—USE OF TRACK.

> Testimony that the railroad company used the track frequently was properly received for the purpose of showing the general railroad use which was made of the road.

6. SAME—METHODS OF WARNING.

> Evidence as to usual methods of warning, adopted when tracks are out of repair, was competent.

7. APPEAL AND ERROR—ASSIGNMENTS OF ERROR.

The claim that a request of the appellant, given in the court's charge, is inconsistent with other portions of the charge, is not reviewable when the point is not relied on in the assignments of error, and no error is assigned on other portions of the charge.

8. SAME.

A general assignment of error on the charge as to the damages recoverable is too broad.

Error to Bay; Collins, J. Submitted November 12, 1908. (Docket No. 79.) Decided July 15, 1909.

Case by Edward Plumb against the Hecla Company and another for personal injuries. A judgment for plaintiff is reviewed by defendant Hecla Company on writ of error. Affirmed.

*Morris L. Courtright* and *Miller, Smith, Paddock & Perry*, for appellant.

*De Vere Hall*, for appellee.

McALVAY, J. This was an action by plaintiff against the Hecla Company, impleaded with the Hecla Belt Line Railroad Company, defendants, for damages for personal injuries received on account of claimed negligence of defendants. Defendants offered no evidence, but at the close of plaintiff's case asked the court to instruct a verdict in their behalf, and in behalf of each of them for several reasons, which will be considered later. This motion was denied, and defendant makes such denial the basis of its principal assignment of error. Plaintiff recovered a substantial judgment against defendant Hecla Company only. The jury found a verdict in favor of defendant Hecla Belt Line Railroad Company.

The following facts are material, and their statement necessary to an intelligent consideration of the case: Plaintiff was, at the time of his injury, a yard conductor, employed by the Michigan Central Railroad Company, in

charge of the switching crew and the switching and distributing of cars in its Bay City yard.  He had been in the employ of the company doing switching since 1892.  Defendant Hecla Belt Line Railroad Company is a Michigan corporation organized under the general railroad laws.  It is a very short line, used for bringing to, and taking away from, the plant of the defendant Hecla Company's cement plant empty and loaded cars.  It is the only road over which cars may come to this plant, and this manufactory is the only one situated on the line of this railroad.  A short piece of this road, 674 feet long, called the "transfer track," is used for the purpose of transferring and switching cars over it to and from the Michigan Central and other roads which cross or are connected by this part with defendant road, and also to bring cars to and from the Hecla Company plant.  This transfer track is built on a sharp curve from the point where it leaves the Hecla Belt Line main track until it connects with the Detroit & Mackinac road.

Plaintiff was well acquainted with the situation, having for two years done switching over this transfer line, and placed and hauled out cars and done other work over it and over the main line of the Hecla Belt Line Railroad Company for the Hecla Company and the Michigan Central Railroad Company, going over the ground twice each day.  On June 17, 1907, plaintiff, under orders of the yardmaster, left the Michigan Central yard about the middle of the afternoon, with a switch engine, going east, pushing 31 freight cars, 5 of which were for the Hecla Company and 26 for the Detroit & Mackinac railroad.  The cars for the Hecla Company were on the east end of the train, convenient to cut off and leave on the main line of the Hecla Belt Line, while the Detroit & Mackinac cars were being transferred.  When the engine had run east of the point where the transfer track left the Belt Line to connect with the Detroit & Mackinac, it whistled for the target at the transfer which was operated by a towerman, and when the train stopped the plaintiff cut off the five cars

for the Hecla Company. When they got the target they ran the train over the transfer track onto the Detroit & Mackinac road, leaving plaintiff at the depot, and taking the 26 cars for that road beyond the depot into its yard. When the engine had left these cars and come back plaintiff got on again, and rode on the footboard of the engine on the fireman's side. The engine was headed east, going back to finish the work to be done for the Hecla Company. They got the target for the transfer track, and while passing back over it on the curve, a rail, from which the spikes and fish plates had been removed, spread and threw the engine from the track. Plaintiff was caught under the footboard, and his leg was crushed. No warning of the dangerous condition of the track was given to plaintiff or the engine crew.

Plaintiff charged in his declaration that at the time of the accident the Hecla Belt Line railroad, including this transfer track and its maintenance and repair, was under the charge and control of the Hecla Company, and the Michigan Central railroad was at the time using said road at the invitation and request of the Hecla Company for the purpose of delivering and placing cars for it at its plant, and that it was its duty to maintain such track in a reasonably safe condition for such purposes, and also in case of repairs to warn and notify plaintiff of the unsafe condition; which duties it neglected, and on account of which neglect plaintiff was injured.

In order to charge defendant Hecla Company with liability for his injury as claimed in his declaration, there must have been furnished by him in the case evidence tending to show,—

(a) That at this time the management, maintenance, and repair of the Hecla Belt Line railroad was under the control of the Hecla Company.

(b) That the Michigan Central engine and the train crew were at the time using this road and its transfer at the invitation or request of said defendant company, and for its purposes and benefit.

Defendant insists that these propositions are not proven, and relies upon such absence of proof as the basis of its motion for an instructed verdict. An examination of plaintiff's proofs shows that the Michigan Central railroad engines and employés went over this road daily for the purposes and benefit of the Hecla Company, and for the purpose of transferring and switching cars to other roads. Plaintiff was there twice a day with the engine and crew, and did all the work required by the Hecla Company under the direction of its officers and agents. The work for the Hecla Company was not confined to bringing cars in and out, but it appears that plaintiff hauled cars loaded with cinders from the boiler house to and upon this transfer track to be there unloaded and used to repair and ballast the roadbed. There is sufficient proof to warrant a finding of express invitation, as to some things done for the defendant company on this road, and from its constant use for other purposes of said company the jury would be justified in finding an implied invitation. This evidence is strengthened by the fact that neither of these defendants owned or possessed engines or other motive power. We do not think that the claim can be made that the Hecla Company had no knowledge of the ordinary uses of the track by the Michigan Central railroad, in view of the undisputed record. Nor do we find in the record that any extraordinary or peculiar use was made of any of the tracks of the Belt Line railroad, and if the record shows, as plaintiff charges, that the Hecla Company was managing and controlling this road, it would be charged with notice of the purposes for which it was used by those who were constantly using it.

Upon the question of management and control of the Hecla Belt Line railroad, there is proof which shows that, besides the track and roadbed, its properties consisted of some cars, which we infer were flat cars, from which its name at the time was being erased and the name of the Hecla Company substituted. Plaintiff in his daily work in connection with this road for over two years never re-

ceived orders from any officer or agent of the corporation, but always transacted his business with and received his orders from the officers and employés of the Hecla Company. This company had no office or place of business known to plaintiff.

Plaintiff testified:

"The Hecla Belt Line Railroad Company had no engine of their own employed upon that railroad, and had no trainmen or section men as far as I know, and had no employés that I know of that did work either operating trains or maintaining the track."

The tracks of this road were not maintained and repaired by the Michigan Central railroad or the connecting road which used them. The foreman of the section men who were employed to maintain and repair these tracks was employed by the assistant superintendent of the Hecla Company.

This man testified that he was section boss on this road, that he supposed he was paid by the Hecla Company as he got his pay at the same time with the rest of the men at the plant; that his crew worked on this transfer track, and was the only crew working on this road to his knowledge. The section men were paid at the Hecla Company office at the same time, in the same manner, and by the persons who paid the rest of the men employed in the cement plant of the Hecla Company. Mr. Hanson, an employé of the Hecla Company, and the section foreman of the section crew at work at the time of the accident, were the persons who told plaintiff to haul the cinders put on the roadbed, and this crew at this time were doing this work on the transfer, and there is proof tending to show that the spikes and fish plates were removed by them and that they left the rail in that condition without warning or notice of the danger. We find that there was evidence to go to the jury upon the question of the control and maintenance of the road by defendant Hecla Company.

Defendant contends that there is no evidence to show

that at the time of the accident this road was being used for the purposes and benefit of defendant Hecla Company. The argument is based upon the fact that the accident occurred upon the transfer track, while plaintiff was returning from placing the cars on the Detroit & Mackinac track to finish the work of placing the cars for defendant Hecla Company, and did not occur upon the main track of the Hecla Belt Line; and that while upon the transfer track no act was done for the benefit of the Hecla Company. This distribution and placing of cars was done in the usual course of business, and in the most convenient manner. No complaint is made that this is not so. That the placing of its cars was for the benefit of the Hecla Company is not disputed; but because plaintiff was coming back over the only track possible to use to complete this work, after disposing, in the ordinary manner, of cars necessary to be transferred before being able to do so, it is claimed that he cannot be held to have been engaged in work for this company's benefit. It is further claimed that the evidence affirmatively sustains defendant's contention. This claim is based upon plaintiff's cross-examination relative to the exact thing he was doing at the time of his injury. The importance claimed for this testimony and its brevity is the excuse for quoting it.

"*Q.* The Hecla Company had no dealings with you in relation to that track had it?

"*A.* Yes, sir.

"*Q.* What dealings did they have with you in relation to the track?

"*A.* Why, I am over to do their work there.

"*Q.* You were not on that track doing their work were you?

"*A.* They used that track for that work.

"*Q.* You were not on that track doing their work?

"*A.* I was coming over that track to do their work.

"*Q.* To get to do their work?

"*A.* Yes, sir.

"*Q.* To get to the track that was used for the work, but you were not on their track doing their work?

"*A.* I was going to do their work.

"*Q.* Were you doing any work for them on that track that day at the time of the injury?

"*A.* I was coming over to do their work, is what I said.

"*Q.* You were going to do it in the future?

"*A.* Yes."

This testimony does not contradict or change the direct examination. It in fact makes it more specific. We have already held that there was evidence in the case to go to the jury tending to show the charge and control over this road in the Hecla Company. The transfer track was a part of the road. Plaintiff testified that this was used for defendant Hecla Company's work, and he repeats that in the testimony above quoted. It is clear to us that the question was one to be submitted to the jury, and that in doing so the court was not in error. The argument of appellant that no liability attached to defendant on account of plaintiff's injury, because it owed him no duty, is the conclusion drawn from defendant's construction of the evidence in the record, relative (*a*) to the use of the track by invitation; (*b*) the control, maintenance and repair of the road; and (*c*) the use of the transfer track for the Hecla Company at the time of the injury. The court not agreeing with such construction as herein expressed, there is no necessity for a discussion of the proposition. Defendant's argument concedes that if a duty had been violated, the negligence claimed, if established, could be imputed to the defendant Hecla Company.

On the motion for an instructed verdict it was claimed that there was a fatal variance between the allegations of the declaration and the proofs, in that plaintiff alleged in his declaration:

" That defendants had failed to furnish fish plates, and the evidence shows that they have been furnished, that they were lying at the side of the track at the time of the accident, and had been temporarily removed by some one."

The above quotation from defendant's brief does not correctly state the allegations of the declaration criticised.

The declaration charges that it was defendant's duty to keep and maintain the transfer track in a reasonably safe condition for use; to provide and equip it with rails connected by fish joints securely bolted to them with such rails spiked to the ties, and not to keep and maintain said track in an unsafe condition owing to their absence; to warn and inform plaintiff that the track was defective and unsafe owing to the absence of fish joints, and that the rails were not securely fastened. A continuing duty is charged as resting upon defendants to keep and maintain this track by certain means reasonably safe, and a failure so to do. This is not a charge of a duty to furnish the equipment and of a failure in that regard, but of a duty to keep and maintain a safe condition and a neglect in that they carelessly, negligently, and wrongfully kept and maintained such track in a defective and unsafe condition owing to the absence of such fish joints, and also failed to warn plaintiff of such danger.

The proofs showed affirmatively that the fish plates had been unbolted and taken off, and were there on the ground, and that the spikes had been drawn from one rail; that this loose rail caused the accident, and no warning of the danger had been given. The proofs tended to show that the rail had been loosened in this manner by the section gang, between the time the train went over this track to place the cars on the Detroit & Mackinac track, and its return to the place of the accident. The proofs as to the cause of the injury, and the neglect causing the same, are within the allegations of the declaration.

Assignments of error relative to the admission of evidence may be grouped. The court permitted evidence which was objected to, relative to the use of the Hecla Belt Line Company tracks by the Michigan Central. This was material as bearing upon the question of general railroad use and of permission and consent by defendants to such use, and also to show for whom the work was done at the time of the accident. The evidence of the use of these tracks by the Detroit & Mackinac was material

as tending to show that the use of the track was a general railroad use.

Exceptions were taken to evidence allowed relative to warning or notice given when a rail is in the condition of the one in question. This evidence was material, and properly admitted.

The remaining errors claimed are assigned upon the charge of the court. In the principal brief defendant discusses but one of these, viz., that portion of the charge relative to the measure of damages. Upon the oral argument the following error in the charge was discussed:

"Because the court having charged the jury that 'if they found that at the time of the accident the Michigan Central Railroad was using the transfer track for its own purposes, and not for the benefit of the cement company, then the cement company is not liable,' the jury should have found a verdict of no cause of action against the Hecla Company under the evidence in the case."

The portion of the charge quoted in this assignment of error was given at the request of appellant. In the argument of defendant in its reply brief it is contended that this was inconsistent with other portions of the charge. No such contention is apparent from the assignment itself, to which the court can alone give attention. The objection cannot be that it was error to give it, as that would be a denial of its own request; and as no errors were assigned upon the other portions of the charge discussed, we will not consider them. The claim, then, must be that, under the evidence, this request as given amounted to an instructed verdict, and the court should have set the verdict of the jury aside. No motion to set aside this verdict was made. Courts, except in extreme cases, do not voluntarily disturb verdicts of juries, and, under the views herein expressed by us, there would have been no justification for such action. The argument presented is not germane to the error assigned.

There remains the question of the correctness of the

charge by the court, upon the measure of damages. The assignment of error reads as follows:

"The court erred in instructing the jury as to the measure of damages that plaintiff could be entitled to, in case they found in his favor."

In the charge the portion which considers the question of damages fills about two printed pages. This assignment is in effect a challenge to every utterance of the court upon the subject. The rule that assignments of error must be specific is well settled. It was held in *Wanner* v. *Mears,* 102 Mich. 554 (61 N. W. 2), that an assignment "that the circuit judge erred in charging the jury and in giving the requests of plaintiff found on pages 134–140 of record" cannot be considered where the pages cited contain any statements by the court in which the law is correctly stated, whatever may be said of the rest. The assignment in this case is within that decision. It is not claimed by the appellant that all of the charge of the court upon the subject of damages was erroneous, yet, if the assignment is held good, error could have been claimed upon any of the several propositions of law contained in it. This, we think, was the very fault which was sought to be remedied by requiring such assignments to be specific, and is for the protection of both court and counsel. We cannot consider this assignment of error, for the reason that it is too general. A strict compliance with all the rules of practice must be required.

The judgment of the circuit court is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.