TOWNSHIP OF ROCKLAND *v.* OXNAM.

1. HIGHWAYS AND STREETS—PAVING CONTRACTS—TIME—EXTENSION—UNREASONABLE DELAY—BONA FIDES—QUESTION FOR JURY.

In an action by a township against contractors who had agreed to build a macadam road to recover damages for nonperformance of the contract, where it appeared that in the fall of the year the work was to be done the time for performance was extended to the next summer and the engineer certified the work as being from 93 per cent. to 97 per cent. completed, and a new engineer taking charge in the spring ordered a good deal of the work taken up and done over, and the work not being done within the time allotted, upon a certificate of the engineer that it was being unreasonably delayed, it was completed by the township, as allowed by the contract in case of unreasonable delay, and the first engineer acted in good faith, *held*, that it was a question for the jury whether plaintiff's second engineer acted in bad faith.

2. SAME—PAVING CONTRACTS—INSTRUCTIONS.

An instruction on the finality of the certificate of the first engineer and that it was a question for the jury whether the second engineer acted in bad faith, *held*, proper as based on sufficient evidence of fraud and bad faith of the second engineer.

Error to Ontonagon; Cooper, J. Submitted June 26, 1917. (Docket No. 29.) Decided September 27, 1917.

Assumpsit. by the township of Rockland against James W. Oxnam and others for the nonperformance of a road contract. Judgment for defendants. Plaintiff brings error. Affirmed.

*John Jones* and *Michael J. Doyle*, for appellant.

*Van Slyck & Walsh*, for appellees.

STONE, J. This is an action of assumpsit to recover damages for the nonperformance of a contract between the plaintiff and the defendants Oxnam and Adair, by which the latter agreed to build a macadam road for the plaintiff. The declaration contained a special count on the contract, and also the common counts. The plea of the defendants Oxnam and Adair was the general issue, with notice that the engineer, Bacco, when he took charge of the work in the spring of 1914, was fraudulently actuated by a desire not to build the road in accordance with the plans and specifications, but by finding fault with the work of the first engineer, Therrien, and at the expense of said defendants, to build an entirely different and more expensive road; that in making his demands, and in requiring the rebuilding of certain portions of said road, which had been accepted by said former engineer as from 93 per cent. to 97 per cent. completed, he was not acting in good faith; that his conduct constituted a continuing breach of said contract up to the day the work was taken over by said plaintiff; that any delay there may have been was attributable solely to the capricious, wanton and fraudulent demands of said Bacco; and that in issuing his certificate that the work was being unnecessarily delayed he acted in bad faith. There

was also a notice of set-off. At the trial a verdict was directed in favor of the defendant the Title Guaranty & Surety Company. A reversal is here sought of the judgment in favor of the defendants Oxnam and Adair, but no reversal is sought as to the defendant the Title Guaranty & Surety Company.

It appeared that on July 30, 1913, the plaintiff entered into a written contract with the defendants Oxnam and Adair, whereby the latter agreed to build a macadam road, in conformity with certain specifications attached to said contract, and made a part thereof, for the consideration of $20,592. The specifications called for 5 miles of macadam road between certain designated places—the width of the road to be 20 feet; the macadam to be 9 feet wide, and to be 6 inches thick when rolled. Plans, profiles, and cross-sections were made a part of the specifications. All clearing, grubbing, excavations, etc., were to be done by the contractors, who were also to do all leveling, grading, surfacing, etc., and to lay the stone, furnish the materials, and all machinery and implements except roller and grader, to furnish all labor, and to put the road in complete order for use, and leave the ground in a neat condition. The work was to be done under the supervision of an engineer to be hired by the township board. Variations of location, profile, size, and dimensions might be made, as required by the exigencies of construction, pursuant to determination of the engineer. The macadam was to be formed of three courses of stone; the lower or first course being coarse stone, the second course to be of finer stone, and the third course being of finely broken stone, which was intended to bind or cement the other courses together, and to act as a dressing for the road. The engineer had authority to stop any portion of the work, if in his judgment the weather was such as to prevent the same being properly done. The decision of the engineer, on

matters in difference between the contractors and the township board, was to be final and conclusive, and the work was to be done according to his directions. Paragraph 43 of the specifications provided that:

"Monthly payments will be made by the township board to the contractor for the work performed upon presentation by him of the proper certificate of the engineer in a sum not to exceed eighty (80%) per cent. of the amount then due; the remainder of the twenty (20%) per cent. will be paid upon acceptance of work by the township board."

The engineer could order the discharge of incompetent workmen, was authorized to give directions and make determination necessary to give due and full effect to the specifications, and all material and workmanship were subject, at all times, to his inspection, and was required to be repaired or replaced when ordered by him. According to the contract the work was to be completed by December 1, 1913. It was provided, however, in the specifications, that extension of time might be allowed, if the work was stopped by the engineer, because of weather conditions. By paragraph 37 of the specifications it was provided:

"If at any time the work under contract should be abandoned, or if at any time the engineer should judge, and so certify in writing, that said work or any part thereof, is unnecessarily delayed, or that the contractor is executing the same in bad faith, then and in that case the township board shall notify the contractor to discontinue all work under this contract. They may employ other parties to complete the work in such manner as they may decide, and charge the expense of said labor and material to the contractor, which expense shall be deducted from the moneys due him under this contract. In case these expenses shall exceed the sum which would have been payable under contract, if the same had been completed by said contractor, his bondsmen shall pay the amount of excess to the township board."

Work was begun on this road in the summer of 1913, and continued until October 21, 1913, at which time the engineer, Therrien, ordered the work stopped for that year, because of weather conditions, and pursuant to the contract the township board was notified to that effect, whereupon the board extended the time for the completion of the contract until July 15, 1914. On October 22, 1913, said engineer gave the fifth estimate, in which he stated certain portions of the road were 93 to 97 per cent. complete, and pursuant to which said defendants received their last payment in the year 1913. Work was resumed by said contractors in May, 1914, under a new engineer—one Bacco. He required considerable work to be done on those portions of the road which were estimated as from 93 to 97 per cent. completed in the last estimate given in 1913. It was his claim and that of the township board that this work was necessary to bring the road up to a proper cross-section, and that the road was badly rutted, and that the condition had been brought about through traffic over the road during the fall of 1913 and the spring of 1914, and also to some extent by the hauling of rock over this partially completed portion of the road by the contractors.

It was the claim of the contractors on the trial, and there was testimony to that effect, that the work done from section 129 to section 264, practically three miles, had been constructed under the direction and supervision of the first engineer, and had been certified by him as being from 93 per cent. to 97 per cent. completed, and that when the second engineer came on the job in the spring of 1914 he required that this work be torn up and done over. Upon this subject defendant Adair testified:

"*Q.* What did he require you to do to that portion? What did he say and direct you to do to that portion?
"*A.* To put the roller on and rebuild the road. We

had 112 days' rolling on that the year before. We had one roller running night and day until we got 112 days. We had it rounded up nicely so that we got 93 per cent. and 95 per cent. and 97 per cent. on all those sections. He just took a big roller, and put in the spikes, and ground it up, and knocked out 112 days' rolling."

It was the further claim of said defendants that to complete that portion of the road, as done under the direction of the engineer, required the placing of only a small amount of No. 3 rock, which had been placed along the sides of the road ready to be put on as final dressing. Said defendants further claimed upon the trial that said new engineer acted in bad faith in said matter, that he was unreasonable and arbitrary, and was not governed by the plans and specifications, and that this unnecessary work in 1914 cost said defendants approximately $4,000, and that compelling them to do this work was a breach of the contract on the part of the plaintiff. There was also testimony to the effect that the result was to make the road an 8-inch road, instead of a 6-inch road, and that the requiring of work on these portions of the road which had been reported as from 93 per cent. to 97 per cent. completed was a cause of the delay in the completion of the contract. The work was not completed by July 15, 1914. The township board did not compel the contractors to quit work at that time, and work was continued until August 24, 1914, at which time the engineer made and delivered to the township board a certificate to the effect that the work on this road was being unnecessarily delayed. Thereupon the township board notified the contractors, the said defendants Oxnam and Adair, to discontinue work on this contract, and the township board took the job over, and completed it. There was evidence to the effect that some of the men quit work while defendants were in charge, because they had not received their July pay, and refused to

go back to work unless paid, all of which defendants claimed was because of the extra work required by the engineer. The record contains a stipulation to the following effect:

"In this cause, in order to reduce the size of the bill of exceptions herein, and to render it unnecessary to include therein a great amount of testimony bearing only on the respective claims for damages of the plaintiff herein, and the defendants Oxnam and Adair herein, it is stipulated and agreed by the said plaintiff and the said defendants Oxnam and Adair, by their respective attorneys, that at the trial of this cause the plaintiff introduced in evidence certain testimony, which, if believed by the jury, tends to show that the said plaintiff had expended upon the road contemplated by the contract introduced in evidence in this cause, the sum of $3,471.22 over and above the price provided in said contract to be paid to the defendants Oxnam and Adair for building said road, and that the defendants Oxnam and Adair introduced at the trial of said cause certain evidence which, if believed by the jury, tends to show that the said defendants Oxnam and Adair expended, in and about the construction of said road, the sum of $3,765 over and above the said contract price, and that the sum of money so expended by the said defendants Oxnam and Adair, as a reasonable value, was the actual value of the work done."

It appears that at the close of defendants' testimony counsel for the plaintiff said:

"We move for—perhaps not for a directed verdict, but, under my view of the case, I don't see anything at all to sustain anything going to the jury on the questions raised by the special defense. The only question here is whether, under the contract, in good faith, the engineer gave his certificate. I submit, as a matter of law, that your honor should hold that there is nothing impeaching the good faith of that certificate on the evidence as it now stands.

"*The Court:* I think I will leave the matter as a question of fact for the jury.

"*Plaintiff's Counsel:* Then the next question is this:

I take the position that, even if the certificate was in bad faith, for the purpose of argument, the undisputed evidence is that, whether rightly or wrongly given, these contractors assented to it."

Thereupon further testimony in rebuttal was introduced by the plaintiff. There were no requests to instruct the jury by either party. The case was submitted to the jury in a lengthy charge covering the issues, and the trial resulted in a verdict and judgment for the defendants Oxnam and Adair in the sum of $1,063.44 damages. The plaintiff made a motion for a new trial upon the grounds that the verdict was contrary to law and the evidence; that it was against the weight of evidence; that it was excessive; that the undisputed evidence shows that the contract sued on, for breach of which by plaintiff the jury awarded the damages assessed, was voluntarily abandoned by the defendants (Oxnam and Adair), and said contract assumed by the plaintiff, at said defendants' request; that the motion of plaintiff to direct a verdict for plaintiff should have been granted; and that there is no evidence in the case warranting a verdict for defendants Oxnam and Adair, against plaintiff, or in submitting the same to the jury. The learned circuit judge filed his reasons for denying said motion, and held that the verdict was not contrary to law or to the evidence; that it was not against the weight of the evidence, or excessive; that the question of abandonment of the contract by the defendants was a disputed question of fact, properly submitted to the jury; and that there were disputed questions of fact, and the motion of plaintiff to direct a verdict in its favor was therefore properly denied, and there was evidence in the case to sustain the verdict of the jury. To which refusal to grant a new trial plaintiff duly excepted. The plaintiff has brought the case here for review, and assigns error as follows:

"(1) There was no evidence that warranted the trial judge in submitting the case to the jury.

"(2) The undisputed evidence in the case established that the defendants Oxnam and Adair had failed to comply with the conditions of the contract for the diligent prosecution of the work; that the engineer, whose jurisdiction and authority were absolute in the premises, duly certified that the work was not being duly prosecuted by the contractors.

"(3) That thereupon the plaintiff township properly and lawfully took over the completion of the work and finished it; that the cost of such finishing (plaintiff's damage) was $3,471.22. These three propositions are undisputed in the evidence. The trial judge should have directed a verdict for plaintiff, and error is assigned for his failure so to do.

"(4) The undisputed evidence shows that there was no breach of contract on the part of plaintiff—there was no evidence that warranted the trial judge in submitting to the jury the question whether plaintiff breached the contract, and the court erred in submitting that question to the jury.

"(5) The undisputed evidence establishes that in any event the contract was abandoned by the defendants Oxnam and Adair, and taken over by the plaintiff with their consent, and plaintiff assigns error on the court's failure to direct a verdict for plaintiff accordingly.

"(6) The estimates offered in evidence were but 'estimates,' and not final and conclusive, as held by the trial judge, and his instructions to the jury along that line were erroneous.

"(7) The court erred in refusing to grant plaintiff's motion for a new trial."

The appellant claims that there are two questions involved:

(1) Did the court err in submitting to the jury the question whether the engineer, Bacco, in the year 1914, wrongfully or in bad faith required the said defendants to bring those portions of the road, which had been estimated at various percentages of completion by the previous engineer, up to what he claimed was a proper cross-section?

(2) Did the court err in submitting to the jury, as a question of fact, whether the plaintiff had the right to take over the work in August, 1914?

It is urged by counsel for the appellees that no question is raised by appellant in its assignments of error that can be of any avail. No objection or exceptions were taken to the admission of evidence, and it is said that the court was not requested to direct a verdict in the case, and that objection cannot be now raised to such submission, especially as the court's attention was not called to any point here urged by a proper request; and *Stuart* v. *Holt*, 166 Mich. 549 (131 N. W. 1100), is cited. It is also urged that there is no assignment of error to any portion of the charge, and that a general assignment that "his instructions to the jury along that line were erroneous" is too general; and *Plumb* v. *Hecla Co.*, 157 Mich. 562, 572 (122 N. W. 208), is cited.

We think there is much force in these criticisms of the assignments of error, but we are disposed to treat the first question raised upon its merits. In the course of its charge the court said:

"It is the claim of the defendants that the engineer who took charge of this work in the summer of 1914 was unfair, and acted in bad faith, and, acting in bad faith, that he compelled them to do a lot of work over, which had been approved by the engineer of the year before. I charge you, gentlemen, that the engineer of the year before was just as much the engineer of the township as the engineer of the second year. If he did approve of the work as it was done, and so certified, then his action was final; that is, the engineer of the second year had no right to override the action of the engineer of the first year. He had no more authority than the engineer who was acting there the first year. The township, having selected the engineer for the first year, was bound by the work of the engineer of the first year, and could not override it by employing another engineer, and the second engineer disapprov-

ing of the work already approved, if such was the case, by the engineer of the first year. I am simply stating to you, gentlemen, the claim of the defendants. The claim of the defendants is that this was done; that, when the second engineer came there, he did not act in good faith, and that he compelled these defendants to do a lot of work over; that work which had been satisfactory to the first engineer did not meet with the approval of the second engineer, and that he required the defendants, in order to get his approval, and get any money under the contract, to rebuild a large portion of this road. That is really the question in dispute upon this set-off, as to whether or not any such circumstances occurred, and that will be a question entirely for your determination, gentlemen. * * * I refer to these facts only so far as I think it necessary to explain to you the law involved. The question for your determination will be upon that question as to whether or not the second engineer by reason of acting in bad faith, and by reason of what he did there, delayed these defendants from completing the contract, and whether the condition which existed, which the plaintiff finally considered ground for taking over the contract, was the fault of the defendants in this case."

It seems to be the claim of appellant that it was not in any way bound by the estimate, and the following quotation is made from 9 Corpus Juris, p. 778, and notes:

"Where the compensation is payable in installments as the work progresses, the final payment becoming due on the completion of the work, and certificates of approval are required as a condition precedent to the right to demand payment, the certificates given during the progress of the work are not regarded as conclusive that the work therein certified to was properly performed, and the architect may properly refuse a final certificate on the ground that the work has not been properly done."

In our opinion, the foregoing is not inconsistent with the charge of the court, which was dealing with

the question of the claimed bad faith of the second engineer. A reference to some of the cases cited in the volume named, especially the cases of *Hebert* v. *Dewey,* 191 Mass. 403 (77 N. E. 822) ; and *Ashland, etc., Cement Co.* v. *Shores,* 105 Wis. 122 (81 N. W. 136), will show that the above language might well be qualified, by stating that such certificates are generally treated as final, as to all matters within the knowledge of the engineer at the time of giving them. This, however, does not dispose of the question of the claimed bad faith of the second engineer, which was the question with which the trial court was dealing. We think there was evidence which warranted the instruction given. There was no evidence or claim of any collusion or bad faith on the part of the first engineer. In our opinion, the question could not be disposed of as a matter of law, and there was no error in the instruction given. In support of the charge, counsel for appellee cite *Wildey* v. *School District,* 25 Mich. 419, and *Lamson* v. *City of Marshall,* 133 Mich. 250 (95 N. W. 78). It follows that, had the assignments of error been duly specific, they would not have been availing.

In our opinion the second question was involved in the first, and both questions were dependent upon the good or bad faith of the second engineer. The record discloses sufficient evidence of fraud and bad faith on the part of the said engineer to warrant the charge of the court. The court did not err in refusing a new trial.

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.