Charles E. Wessinger *vs.* H. Werner Sons Co.
(and a companion case[1]).

Suffolk.    October 6, 1959. — December 15, 1959.

Present: Wilkins, C.J., Ronan, Spalding, Williams, & Whittemore, JJ.

*Sale,* Contract of sale, Sale by weight.

Where it appeared that the parties to negotiations for sales of wadding agreed upon a price based on net weight, that is, the gross weight less the weight of the packaging, but that subsequently the buyer learned that the seller was insisting on a gross weight basis and, although disputing the position taken by the seller, continued to order, accept, and use shipments of wadding knowing that they were offered and being billed on a gross weight basis, the buyer must be held to have agreed to the gross weight terms of the seller respecting such subsequent shipments. [105–106]

---

[1] The companion case is H. Werner Sons Co. *vs.* Charles E. Wessinger.

G. L. c. 94, § 176, was not applicable to sales of wadding for coat linings as to which the buyer must be held to have accepted the seller's specification of a price on a gross weight basis rather than a net weight basis. [106]

Where it appeared that the parties to negotiations for sales of wadding agreed upon a price based on net weight, that is, the gross weight less the weight of the packaging, but that after four shipments with invoices specifically indicating a net weight price basis, the seller made further shipments billed on a gross weight basis without specific indication in the invoices whether the basis of the prices was gross weight or net weight, and that the buyer accepted and paid for the later shipments without knowing or having reason to know that the prices were on a gross weight basis, the buyer could not properly be said to have agreed to the changed price basis for the later shipments and was entitled to recover from the seller with respect thereto the difference between the prices on a gross weight basis and those on a net weight basis. [106–107]

CONTRACT. Writ in the Superior Court dated January 2, 1957.

CONTRACT OR TORT. Writ in the Superior Court dated May 22, 1957.

Upon the report of an auditor whose findings were final, judgment in favor of Wessinger in each action was ordered by *J. V. Sullivan*, J. H. Werner Sons Co. alleged exceptions.

*Edward J. Barshak*, (*Samuel Winetsky* with him,) for H. Werner Sons Co.

*Bernard P. Rome*, (*Julius Thannhauser* with him,) for Wessinger.

RONAN, J. These are two actions, one by Charles E. Wessinger, doing business as Arlington Wadding Co. (hereinafter called the seller), against H. Werner Sons Co. (hereinafter called the buyer) in contract for goods sold and delivered from September 26, 1956, to November 30, 1956, according to an account annexed. The buyer set up in its answer a general denial and a breach of an express or implied warranty that the goods were fit for the use for which they were intended and were sold on a gross weight basis rather than on a net weight basis in violation of G. L. c. 94, § 176. The second action is by the buyer against the seller for breach of warranty and misrepresentation as to

the weight by which they were sold. Both cases were tried before an auditor whose findings of fact were to be final. It was agreed by the parties before the auditor that, if the seller is entitled to recover without deductions, he is entitled to recover $7,759.69 leaving out for the moment any question of interest. Of course the buyer was not entitled to be credited upon the grounds set up in its answer and upon the same grounds as plaintiff in the second action. See *Hebert* v. *Dewey*, 191 Mass. 403, 407. The auditor's findings were in favor of the seller in both cases.

The seller was a processor of wool purchased by the buyer as wadding for use in coat linings. The only issue now before us is whether the wadding was sold on a gross or a net weight basis.

The findings of the auditor follow: Early in 1955 the parties entered into negotiations for the sale and purchase of wool wadding. Prices were agreed upon as were other details. The buyer specified that the wadding was to be shipped on a net weight basis and the seller so understood the arrangement. The first four shipments, in April and May of 1955, were shipped, billed and paid for on a net weight basis. The net weight prices were shown on the invoices as the result of subtracting the "tear" (tare) allowance, i.e., the weight of the packaging, from the gross weight. Subsequent invoices, however, contained no statement as to whether the wadding was billed on a gross or net weight basis and no mention was made thereon of tare. The quality of the goods was satisfactory and invoices were paid by the buyer as they were rendered.

In the latter part of March, 1956, the buyer promoted an employee to foreman of the manufacturing room of its plant and sometime during the month of April the new foreman noticed shortages in the weight of the wadding received from the seller. Upon complaint, a conference was held by the treasurer and the foreman of the buyer and the seller's bookkeeper in middle or late April, 1956. The auditor found that it was during this conference that the buyer first learned that the seller was then billing it on a gross weight basis,

that is, that the price of the shipments included the weight of the cardboard cone and wrapping paper used to ship the wadding, and that all shipments after the initial net weight shipments had been on a gross weight basis.

Discussions were held between April and July of 1956 at which each side adhered to its position: the buyer insisting that it would not pay for wool on a gross weight basis; the seller insisting that he would sell in no other way. Each knew and understood the other's position. Under these conditions the buyer continued to order from the seller substantially all of its requirements of wool wadding. The wadding was billed on a gross weight basis and used by the buyer. The auditor found that these invoices were paid by the buyer "with full knowledge that the billings were on a gross weight basis."

We need not relate in detail the subsequent course of dealing between the parties. Each adhered to its position with respect to the billing. Hostility increased throughout the summer of 1956. The buyer "hoped, and more or less expected," that it would be able to adjust its differences with the seller, and continued to order wadding which was billed on a gross weight basis and paid for as billed. The seller's action is for shipments from September 26, 1956, to November 30, 1956, the invoices for which were not paid when the parties ceased doing business with one another.

With respect to the seller's claim, the auditor was correct in his ruling. Having accepted the merchandise in question (the shipments from September 26 to November 30, 1956, payment for which is all the seller seeks) with the knowledge of the terms upon which it was offered, the buyer must be held to have accepted those terms. *Hobbs* v. *Massasoit Whip Co.* 158 Mass. 194, 197. *Puffer Mfg. Co.* v. *Krum,* 210 Mass. 211, 213. *Amesbury & Salisbury Gas Co.* v. *Gibney,* 210 Mass. 498. *Scott* v. *Dedham Water Co.* 224 Mass. 398. *Flesher* v. *Handler,* 303 Mass. 482. Williston, Contracts (Rev. ed.) § 90. The buyer purchased the wadding here in dispute knowing that the seller was offering it only on a gross weight basis, and by accepting and using it the

buyer is held to have agreed to the seller's terms, despite any hope to negotiate a better price.

The buyer urges the applicability of G. L. c. 94, § 176. That section provides as follows: "'Weight' in a sale of commodities by weight shall mean the net weight of all commodities so sold; and contracts concerning such sales shall be so construed; provided, that in respect to commodities not intended for food or fuel reasonable tolerances or variations shall be permitted in accordance with established trade customs. Violation hereof shall be punished by a fine of not more than one hundred dollars." This section is not applicable, however, to the sales here in issue or to any sales after April, 1956, which sales the buyer must be said to have accepted on the seller's terms as to weight. There is nothing in the statute, or in § 177 (which in substance provides criminal penalties for short weight sales),[1] which prevents parties dealing at arm's length from agreeing upon a price based upon gross, rather than net, weight. The auditor found there was no fraud on the part of the seller. The statute, G. L. c. 94, § 176, as amended, does not in terms state that a sale not within its terms is void. See *Barriere* v. *Depatie*, 219 Mass. 33.

With respect to shipments of wadding between May 19, 1955 (the last of the net weight shipments), and April, 1956 (when the buyer first noticed shortages and was first told by the seller that shipments had been on a gross weight basis), the matter stands otherwise. The invoices covering shipments after the initial net weight billings contained no statements as to whether the wadding was being billed on a gross or a net weight basis. The buyer might reasonably assume, as it did, that shipments had continued on a net weight basis according to the prior agreement which had been carefully negotiated by the parties. There is no finding that the seller informed the buyer any time prior to

---

[1] The legislative history of § 177 does not require a contrary conclusion. See St. 1826, c. 121, § 1; Rev. Sts. (1836) c. 30, § 25; Gen. Sts. (1860) c. 51, § 17; Pub. Sts. (1882) c. 65, § 27; R. L. (1902) c. 62, § 39; St. 1913, c. 164; St. 1913, c. 801; St. 1917, c. 14.

April, 1956, that he wished to change the original agreement, or that the buyer learned of the fact that the seller was billing on a gross weight basis.  We are bound by the auditor's finding that the buyer did not in fact learn of this change until the conference with the seller's bookkeeper in April of 1956.  There is no ground for supposing that the buyer should reasonably have known of the change sooner than it did.  It is true that the initial (net weight) billings contained an allowance for tare and that the subsequent invoices did not.  We cannot say, however, that this device operated to change the original negotiated agreement into one based upon the gross weight of the shipments.  The buyer might reasonably have considered the deletion of the tare allowance on the invoices merely as a simplification of the billing.  Some more definite notice to the buyer was required of the seller before he could alter the negotiated agreement.  There was a change in the original agreement when the buyer moved its plant and the seller wished higher compensation for delivery costs and this change was carefully worked out by negotiation, as the original agreement had been.  The buyer's payment of the invoices as rendered in the ordinary course of business prior to April, 1956, cannot in these circumstances be deemed an acceptance of the terms of an offer different from the one the parties had negotiated previously over a period of time and agreed upon.

We are therefore of opinion that the buyer is entitled to recover in its cross action the difference in value between the price computed on a gross weight basis and the price computed on a net weight basis of the shipments between the initial net weight shipments in April and May, 1955, and the conference which took place in April of 1956.  Even if there were no prior agreement between the parties to continue on a net weight basis, G. L. c. 94, § 176, would apply to interpret such undesignated sales by weight as are involved here as meaning net weight.  There was no finding as to usage in the trade and the auditor's finding that the initial agreement was based upon net weight eliminates any necessity to resort to trade usage.

The auditor stated that he was unable to find when the change in billing took place during the period in question or how much poundage was shipped according to the changed billing from the initial shipments to April, 1956. The seller testified before the auditor that all shipments made after the first ones in 1955 (which were on a net weight basis) were on a gross weight basis; that there were 4,444 rolls of wadding shipped after these first shipments until April 1, 1956; and that the difference in dollar value between the gross weight basis and the net weight basis amounted to $1,229.66. *Union Old Lowell Natl. Bank* v. *Paine,* 318 Mass. 313, 323–324. *Howes* v. *Warren,* 321 Mass. 475. *Smith* v. *Graham Refrigeration Prod. Co. Inc.* 333 Mass. 181, 183–184. *Connors* v. *Medford,* 334 Mass. 260.

With respect to the second count in the buyer's cross action it is clear that the total quantity of wadding sold to the buyer during the period in question is not precisely known, but it seems to us to be a matter not in dispute that the 4,444 rolls were sold during that period and, as the parties agreed upon the rate of tare to be allowed, the buyer is entitled to a finding of $1,229.66 on this item.

In the case of Wessinger *v.* H. Werner Sons Co., the defendant's exceptions are overruled.

In the case of H. Werner Sons Co. *v.* Wessinger, the exceptions are sustained and judgment is to be entered for the plaintiff in the sum of $1,229.66 with interest.

*So ordered.*